938 So.2d 625 (2006)
MARK WAYNE PATTERSON, Appellant,
v.
STATE OF FLORIDA, Appellee.
Case No. 2D04-2243.
District Court of Appeal of Florida, Second District.
Opinion filed October 6, 2006.
James Marion Moorman, Public Defender, and Richard J. Sanders, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Deborah Fraim Hogge, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
Mark Wayne Patterson appeals an order withholding adjudication and placing him on probation for a series of motor vehicle offenses, the most serious of which was the third-degree felony offense of driving while license suspended as a habitual traffic offender. See §§ 322.264, .34(5), Fla. Stat. (2003). Mr. Patterson entered a plea of no contest to the charges, but reserved the right to appeal one issue: the denial of his "motion in limine to exclude prior uncounseled pleas." This motion argued that Mr. Patterson could not be convicted of driving while license suspended as a habitual traffic offender because some of the prior convictions that supported his designation as a habitual traffic offender were entered in violation of his right to counsel. Pursuant to Lewis v. United States, 445 U.S. 55 (1980), we conclude there is no constitutional infirmity in the use of uncounseled pleas to support Mr. Patterson's designation as a habitual traffic offender or the subsequent use of this designation to "reclassify" his subsequent offense. We therefore affirm the order withholding adjudication and placing Mr. Patterson on probation.

I. BACKGROUND
On September 19, 2003, as a result of a routine traffic stop, Mr. Patterson was charged with a number of traffic infractions. At the time, Mr. Patterson's license was suspended because the Department of Highway Safety and Motor Vehicles (DHSMV) had classified him as a habitual traffic offender and suspended his license as required by section 322.264. Thus, the most serious charge Mr. Patterson faced was the third-degree felony of "driving while license suspended as a habitual traffic offender." § 322.34(5).
Mr. Patterson filed a "motion in limine to exclude prior uncounseled pleas." He alleged that his designation as a habitual traffic offender was the result of pleas he entered in four prior case numbers, based on charges that were punishable by up to nine months in jail.[1] Mr. Patterson asserted that he had entered the pleas without the assistance of counsel at a time when he was indigent and that he entered the pleas without knowingly and voluntarily waiving his right to counsel. As a result, Mr. Patterson argued, these offenses could not be used to enhance his sentence or reclassify[2] his current offense of driving with a suspended license from a misdemeanor to a third-degree felony. In support of his argument, Mr. Patterson cited State v. Beach, 592 So. 2d 237 (Fla. 1992), and Hlad v. State, 585 So. 2d 928 (Fla. 1991). The trial court denied this motion after a brief hearing and later accepted Mr. Patterson's plea of no contest to this charge, subject to Mr. Patterson's reserving his right to appeal this issue.

II. THE RECLASSIFICATION OF DRIVING WHILE LICENSE SUSPENDED FROM A MISDEMEANOR TO A FELONY
To understand Mr. Patterson's argument on appeal and to assess its validity, it is important to first distinguish the two ways in which sequential convictions for driving while license suspended may result in an increase in the degree or level of the offense, thus exposing the defendant to a greater penalty.
A first offense of driving while license suspended is a second-degree misdemeanor. § 322.34(2)(a). Under section 322.34(2)(b), a second offense becomes a first-degree misdemeanor, and under section 322.34(2)(c), a third or subsequent offense becomes a third-degree felony.
Although this was apparently Mr. Patterson's fifth offense of driving while license suspended, he was not charged under section 322.34(2)(c). Instead, he was charged with a violation of section 322.34(5), which provides:
Any person whose driver's license has been revoked pursuant to s. 322.264 (habitual offender) and who drives any motor vehicle upon the highways of this state while such license is revoked is guilty of a felony of the third degree. . . .
Section 322.264 defines a "habitual traffic offender" as a person whose driving record, as maintained by the Department of Highway Safety and Motor Vehicles (DHSMV), reflects three or more convictions for specified moving traffic offenses (including driving while license suspended), occurring within five years. Section 322.27(5) requires the DHSMV to revoke the license of a person designated as a habitual traffic offender for a minimum of five years.
Thus, a person who is charged with a fourth offense of driving while his license is suspended may be charged with either (1) the third-degree felony described in section 322.34(2)(c), or (2) the third-degree felony described in section 322.34(5), as long as the DHSMV has revoked his driver's license as a habitual traffic offender. Although both offenses are third-degree felonies, the elements of each offense are different. Each requires a current offense of driving while license suspended, but section 322.34(2)(c) specifically relies upon proof of the prior convictions to support the reclassification of the current offense, while section 322.34(5) relies upon proof of the DHSMV's designation of the defendant as a habitual traffic offender to reclassify the offense.
Because section 322.34(2)(c) requires proof of the prior convictions as elements of the offense, the validity of those convictions may be challenged in an effort to prevent the reclassification of the charged crime. Specifically, Florida courts have held that a defendant charged with a sequential crime may challenge the use of prior convictions to reclassify the crime or increase the penalty when the prior convictions were obtained in violation of the defendant's constitutional right to appointed counsel. See, e.g., Davis v. State, 710 So. 2d 116, 117 (Fla. 2d DCA 1998); Register v. State, 619 So. 2d 498 (Fla. 2d DCA 1993); Kirby v. State, 765 So. 2d 723 (Fla. 1st DCA 1999). The genesis of these cases can be traced to two Florida Supreme Court cases, Beach, 592 So. 2d 237, and Hlad, 585 So. 2d 928. In turn, Beach and Hlad were based upon United States Supreme Court precedent involving the constitutional right to counsel and the validity of convictions obtained in violation of that right.

III. THE RIGHT TO COUNSEL AND THE USE OF CONVICTIONS OBTAINED IN VIOLATION OF THAT RIGHT
In Gideon v. Wainwright, 372 U.S. 335 (1963), the United States Supreme Court recognized an indigent criminal defendant's right to appointed counsel in felony criminal proceedings and reversed a conviction obtained in violation of that right. In Burgett v. Texas, 389 U.S. 109 (1967), the Court went a step further, holding that a felony conviction obtained in violation of the right to counsel could not be used to "support guilt or enhance punishment for another offense." Id. at 115. In fact, the Court held that the prior judgments in Burgett, which did not reflect that the defendant was represented by counsel, raised a presumption that the defendant was denied his right to counsel and that no waiver of that right could be inferred from a silent record. Id. at 114; see also United States v. Tucker, 404 U.S. 443 (1972) (prohibiting use of conviction obtained in violation of right to counsel on sentencing scoresheet); Loper v. Beto, 405 U.S. 473 (1972) (holding defendant was deprived of due process by use of convictions that were constitutionally invalid under Gideon to impeach his credibility during trial).
Although a defendant's right to counsel in felony cases was well established in the 1960s, the law was slower to develop in misdemeanor cases. As of 1979, based upon the United States Supreme Court's opinions in Argersinger v. Hamlin, 407 U.S. 25 (1972), and Scott v. Illinois, 440 U.S. 367 (1979), appointed counsel was required in all felony cases but was not required in misdemeanor cases when a term of imprisonment was not actually imposed.
In Baldasar v. Illinois, 446 U.S. 222 (1980), overruled by Nichols v. United States, 511 U.S. 738 (1994), Baldasar had a prior uncounseled misdemeanor theft conviction, punishable by imprisonment of up to one year, but he had received a sentence of only probation, making the conviction "valid" under Scott and Argersinger. Thereafter, however, the conviction was used to support a charge of felony theft (second offense), resulting in a sentence of three years' imprisonment. In addressing whether the prior uncounseled conviction could support the reclassification of the second theft offense, four justices of the Supreme Court joined in a per curiam opinion holding that the prior conviction, though "valid" under Scott, could not be used to support the later more serious charge. Justice Blackmun filed a concurring opinion, agreeing that the prior conviction could not be used to support the subsequent offense, but arguing that a criminal defendant should be afforded appointed counsel in any prosecution for an offense punishable by more than six months' imprisonment or whenever the defendant is convicted and actually sentenced to a term of imprisonment. Baldasar, 446 U.S. at 229.[3]
It was within this context that the Florida Supreme Court decided Beach, 592 So. 2d 237, and Hlad, 585 So. 2d 928, relied upon by Mr. Patterson. In Hlad, the Florida Supreme Court interpreted Justice Blackmun's concurring opinion in Baldasar as supporting a holding by the majority of the Supreme Court that an uncounseled conviction could not be used to reclassify a subsequent offense or enhance a subsequent sentence if the prior crime was punishable by more than six months' imprisonment or the defendant was actually subjected to a term of imprisonment. Hlad, 585 So. 2d at 930. Said conversely, the uncounseled conviction could be used for these purposes if it was for a crime punishable by less than six months' imprisonment and the defendant was not actually imprisoned.
In Beach, the Florida Supreme Court relied upon Hlad to establish a procedure by which a defendant could challenge the use of prior uncounseled convictions when the State sought to use them to reclassify or increase the penalty for a subsequent offense. Under Beach, the defendant must file an affidavit asserting under oath (1) that the prior offense was punishable by more than six months in prison or that the defendant was actually subjected to imprisonment (consistent with Hlad's interpretation of Baldasar); (2) that the defendant was indigent and thus entitled to court-appointed counsel; (3) that counsel was not appointed; and (4) that the right to counsel was not waived. Beach, 592 So. 2d at 239. At that point, the burden shifts to the State to prove that counsel was indeed provided or that the right to counsel was validly waived.
As stated above, the Beach/Hlad analysis has since been applied to challenge the use of prior uncounseled pleas as predicate offenses for Florida statutory recidivist offenses. See Davis, 710 So. 2d 116; Register, 619 So. 2d 498; Kirby, 765 So. 2d 723.[4] It is this analysis that Mr. Patterson seeks to apply here. However, he seeks to apply it to a statute that does not require proof of prior convictions to support the offense, but requires proof of an administrative designation that was based on prior convictions.

III. THE PRINCIPLES OF BEACH AND HLAD DO NOT APPLY WHEN A RECLASSIFICATION IS BASED ON AN ADMINISTRATIVE DESIGNATION RELYING ON PRIOR UNCOUNSELED CONVICTIONS RATHER THAN DIRECTLY ON PRIOR CONVICTIONS
As explained above, section 322.34(5) does not require, as an element of the crime, a finding of specific prior convictions for the same or similar crimes. State v. Fields, 809 So. 2d 99, 101 (Fla. 2d DCA 2002). A conviction under section 322.34(5) simply requires competent evidence showing that the DHSMV maintained a record on the motorist, that the record reflected three prior moving violation convictions, and that the motorist received notice of his designation as a habitual traffic offender and the resulting suspension of his license. Fields, 809 So. 2d at 101; State v. Miller, 830 So. 2d 214, 215 (Fla. 2d DCA 2002). Thus Florida courts have held that the State is not required to present proof of the prior convictions in order to establish prima facie evidence of this crime. Id.; see also Rodgers v. State, 804 So. 2d 480 (Fla. 4th DCA 2001); Arthur v. State, 818 So. 2d 589 (Fla. 5th DCA 2002) (en banc). Mr. Patterson's case, therefore, is distinguishable from Beach, Hlad, and their progeny because his conviction rests on a substantially different statutory structure.
Mr. Patterson does not challenge the validity of the civil disability imposed by sections 322.264 and 322.27(5). There is no question the legislature can require a lengthy suspension of a driver's license when there has been an administrative proceeding determining that the driver poses an unreasonable risk on the road. We have found no precedent that would prevent an administrative body like the DHSMV from relying on uncounseled but at least facially valid convictions to support such an action. Indeed, Mr. Patterson does not allege that he challenged the DHSMV's decision to designate him as a habitual traffic offender in that administrative proceeding.[5]
At least one court in another jurisdiction has held that the use of uncounseled convictions in administrative proceedings to impose certain civil disabilities is appropriate, even though their use may result in a determination of a "status" that may subject the defendant to more serious criminal sanctions. See Musick v. Kan. Dep't of Revenue, 825 P.2d 531 (Kan. Ct. App. 1992). In Musick, the court held that an uncounseled conviction can support the label of "habitual violator" as a "civil disability": "Once a person has been labeled a habitual violator, if he or she . . . drives, [the statute] merely imposes criminal sanctions for the subsequent act of driving." Id. at 537; see also Clark v. Sec'y of State, 483 A.2d 708 (Me. 1984).
Musick relied specifically on a United States Supreme Court case, Lewis v. United States, 445 U.S. 55 (1980). In Lewis, the defendant had been convicted of a felony in Florida, allegedly in violation of his right to counsel. Lewis had not sought postconviction relief directed toward this conviction. Thereafter, he was charged under a federal statute for felon in possession of a firearm. After noting that the federal statute governing the offense said nothing about the validity of the underlying conviction, the Supreme Court stated:
We recognize, of course, that under the Sixth Amendment an uncounseled felony conviction cannot be used for certain purposes. The Court, however, has never suggested that an uncounseled conviction is invalid for all purposes.
Use of an uncounseled felony conviction as the basis for imposing a civil firearms disability, enforceable by a criminal sanction, is not inconsistent with Burgett, Tucker, and Loper. In each of those cases, this Court found that the subsequent conviction or sentence violated the Sixth Amendment because it depended upon the reliability of a past uncounseled conviction. The federal gun laws, however, focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons. Congress' judgment that a convicted felon, even one whose conviction was allegedly uncounseled, is among the class of persons who should be disabled from dealing in or possessing firearms because of potential dangerousness is rational. Enforcement of that essentially civil disability through a criminal sanction does not" support guilt or enhance punishment," see Burgett, 389 U.S., at 115, 88 S. Ct., at 262, on the basis of a conviction that is unreliable when one considers Congress' broad purpose. . . .
Again, it is important to note that a convicted felon may challenge the validity of a prior conviction, or otherwise remove his disability, before obtaining a firearm. We simply hold today that the firearms prosecution does not open the predicate conviction to a new form of collateral attack.
Lewis, 445 U.S. at 66-68 (footnotes and some citations omitted).
Here, similarly, the habitual traffic offender statutes do not focus on the "reliability" of the prior convictions. They reflect a rational legislative judgment that a certain class of persons should be prevented from driving because of potential dangerousness. Similarly, Mr. Patterson, like the defendant in Lewis, had the opportunity to challenge the validity of one or more of his convictions by seeking postconviction relief before they resulted in a finding that he was a habitual traffic offender. Thus under Lewis, the imposition of the civil disability of license suspension and the enforcement of that disability through a new criminal sanction does not "support guilt or enhance punishment" on the basis of a conviction that is unreliable. Id.
We recognize that the application of Lewis to the habitual traffic offender provisions seems to create a logical inconsistency between similar statutes. That is, the State may be prohibited from seeking a third-degree felony conviction for driving while license suspended under section 322.34(2)(c) because it cannot rely on convictions that are "unreliable" because they were obtained in violation of the right to counsel, but the State can use the same convictions, by way of an administrative designation that does not assess their reliability, to support a third-degree felony conviction under section 322.34(5). In addition, a prior uncounseled conviction that may no longer be subject to a traditional collateral attack, see Fla. R. Crim. P. 3.850(a)(1), (b), may conclusively support a defendant's designation as a habitual traffic offender, but the same conviction is effectively open to a collateral attack regarding its use on a scoresheet or to support a conviction for a sequential crime.
Nevertheless, the Constitution does not prohibit this inconsistency. Under Lewis, there is no constitutional issue raised by the use of a possibly "unreliable" conviction to support an administrative designation and civil disability or the subsequent punishment arising from violating the law while under that designation and disability.
We therefore affirm the order withholding adjudication and placing Mr. Patterson on probation.
Affirmed.
NORTHCUTT and CASANUEVA, JJ., Concur.
NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.
NOTES
[1] The record is not clear, but it appears these cases involved four other citations for knowingly driving while his license was suspended. See § 322.34(2), Fla. Stat. (2003).
[2] We refer generally to the "enhancement" of a sentence when the prior offense is used solely for sentencing purposes, but to the "reclassification" of the offense when the prior offense is used to charge the defendant with an offense that is greater in degree.
[3] The four justices who agreed with Justice Blackmun that the case required reversal did not specifically espouse the "punishable by more than six months' imprisonment" portion of Justice Blackmun's reasoning.
[4] We note that in 1994, the United States Supreme Court overruled Baldasar, in Nichols, 511 U.S. 738. In Nichols, the Supreme Court effectively reaffirmed the holding in Scott, 440 U.S. 367that a prior uncounseled conviction for a misdemeanor that could have resulted in imprisonment of up to one year in prison but for which the defendant was not imprisoned was a valid conviction that could be used to enhance the penalty for a subsequent offense. But see Shelton, 535 U.S. 654 (2002) (reversing an uncounseled conviction resulting in a suspended sentence as invalid). Only the First District seems to have noticed the discrepancy between Beach and Hlad, both of which continue to rely on the "punishable by more than six months in prison or actually subjected to imprisonment" analysis, and Nichols, which holds that a misdemeanor conviction obtained without counsel is valid whenever no term of imprisonment is imposed. See Kirby, 765 So. 2d 723. In Kirby, the defendant filed the affidavit contemplated in Beach and met Beach's technical requirements by alleging only that the challenged conviction was punishable by more than six months' imprisonment. It was not clear whether Kirby had actually served any term of imprisonment based upon the prior conviction. The First District recognized that Beach and Hlad were issued before Nichols and relied upon the now-overruled Baldasar. However, the Kirby court theorized the Florida state constitutional guarantee of a right to counsel may extend beyond the confines of the federal constitutional right. As such, the First District was unwilling to conclude that Nichols had overruled Beach or Hlad. In this case, Mr. Patterson filed the affidavit envisioned by Beach and identical to the one in Kirby, asserting that his prior convictions would have permitted sentences of over six months' imprisonment, without indicating whether he was actually imprisoned for any of the offenses. We need not decide in this case whether Beach, Hlad, and Kirby properly delineate the appropriate use of prior convictions to enhance a subsequent criminal penalty because this case presents another issue: whether that reasoning applies when the legislature has designed a recidivist statute to define the offense not by reference to prior convictions, but to an administrative designation based upon such convictions.
[5] We note, however, that the law is not clear whether a driver can object at the administrative level to the use of uncounseled convictions to support the habitual traffic offender designation or the resulting license suspension. See, e.g., State, Dep't of Highway Safety & Motor Vehicles v. Vogt, 489 So. 2d 1168 (Fla. 2d DCA 1986) (holding county court had no authority to prohibit the DHSMV from using a prior uncounseled conviction to determine the length of a driver's license revocation, but suggesting the driver might have been able to seek certiorari review of the DHSMV action).