999 So.2d 1029 (2008)
STATE of Florida, Petitioner,
v.
Glenn KELLY, Respondent.
No. SC07-95.
Supreme Court of Florida.
December 30, 2008.
*1032 Bill McCollum, Attorney General, Tallahassee, FL, Celia Terenzio, Bureau Chief, Assistant Attorney General, Mitchell A. Egber, Assistant Attorney General, Daytona Beach, FL, for Petitioner.
Frank A. Maister and Garrett Elsinger, Fort Lauderdale, FL, for Respondent.
Paula S. Saunders, Assistant Public Defender, Second Judicial Circuit, Tallahassee, FL, and Michael Robert Ufferman, Tallahassee, FL, on behalf of The Florida Association of Criminal Defense Lawyers, as Amicus Curiae.
LEWIS, J.
In this case, we review the decision of the Fourth District Court of Appeal in State v. Kelly, 946 So.2d 1152 (Fla. 4th DCA 2006), in which the Fourth District certified the following question to be one of great public importance:
CAN AN UNCOUNSELED PRIOR MISDEMEANOR CONVICTION, IN WHICH THE DEFENDANT COULD HAVE BEEN INCARCERATED FOR MORE THAN SIX MONTHS, BUT WAS NOT INCARCERATED FOR ANY PERIOD, BE USED TO ENHANCE A CURRENT CHARGE FROM A MISDEMEANOR TO A FELONY?
Id. at 1154. We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution, and for the reasons explained below, we rephrase the certified question as follows:
WHAT IS THE SCOPE OF A CRIMINAL DEFENDANT'S RIGHT TO COUNSEL UNDER ARTICLE I, SECTION 16[1] OF THE FLORIDA CONSTITUTION CONCERNING THE STATE'S USE OF PRIOR UNCOUNSELED MISDEMEANOR CONVICTIONS TO ENHANCE A LATER CHARGE FROM A MISDEMEANOR TO A FELONY?
This case results from the State's request that we recede from Hlad v. State, 585 So.2d 928 (Fla.1991), and State v. Beach, 592 So.2d 237 (Fla.1992). Hlad *1033 held that the State may not use a criminal defendant's prior uncounseled[2] misdemeanor driving-under-the-influence ("DUI") convictions to increase a subsequent DUI charge from a misdemeanor to a felony, where the prior uncounseled misdemeanors led to actual imprisonment or were punishable by more than six months' imprisonment. See 585 So.2d at 928-30. Beach, in turn, clarified the elements that a defendant must assert through an affidavit to preserve an alleged instance of Hlad error. See 592 So.2d at 239.
The State premises its request entirely upon Nichols v. United States, 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994), a United States Supreme Court decision holding that the prosecution may use an uncounseled misdemeanor conviction which is invalid for purposes of imposing imprisonment in a direct proceedingto impose enhanced imprisonment in a collateral proceeding. See 511 U.S. at 749, 114 S.Ct. 1921. The State correctly notes that Nichols overruled some of the federal precedent upon which this Court relied when deciding both Hlad and Beach. See Nichols, 511 U.S. at 748-49, 114 S.Ct. 1921, overruling Baldasar v. Illinois, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980). The instant case, as with its predecessor Hlad, involves consideration of the State's use of prior uncounseled misdemeanor DUI convictions to enhance a defendant's subsequent DUI offense from a misdemeanor to a felony.

I. BACKGROUND
The events leading to Glenn E. Kelly's felony DUI charge occurred on January 18, 2003, at approximately 10:45 p.m., when deputies with the Broward County Sheriff's Office arrested Mr. Kelly for his fourth DUI offense. Kelly consented to a breathalyzer test, which produced results of .092% and .090% breath-alcohol content; these results are consistent with legal intoxication in Florida. See § 316.193(1)(c), Fla. Stat. (2003). The Sheriff's Office also conducted an inventory search of Kelly's vehicle, during which deputies found an open bottle of whiskey in the vehicle's center console.
The State filed an information based on these events in Broward County Court on February 14, 2003, charging Mr. Kelly with misdemeanor DUI. The State, however, was not prepared for trial and eventually nolle prosequied the charge. The State later refiled the case on April 26, 2004, in circuit court as a felony DUI charge based on Kelly's three prior misdemeanor DUI convictions. See § 316.193(2)(b)(3), Fla. Stat. (2003) ("Any person who is convicted of a fourth or subsequent violation of this section, regardless of when any prior conviction for a violation of this section occurred, commits a felony of the third degree...."). Two of Kelly's prior misdemeanor DUI convictionsthose from March 2, 1995, and September 18, 1997, respectivelywere each punishable by more than six months' imprisonment, and were the result of uncounseled no-contest pleas.[3] However, Kelly did not file a motion to dismiss or a Beach affidavit until October 21, 2005, due to a substitution of counsel.
In the motion to dismiss, Kelly's counsel explained that based on Hlad and Beach, the circuit court lacked jurisdiction because there was no valid felony charge to prosecute at the circuit level. Counsel *1034 also informed the circuit court that Kelly's attached affidavit satisfied each of the four Beach elements required to preserve a Hlad objection to the State's use of prior misdemeanors as enhancers (i.e., Mr. Kelly asserted under oath that: (1) the offenses involved were punishable by more than six months' imprisonment; (2) he was indigent and, thus, entitled to court-appointed counsel; (3) counsel was not appointed; and (4) he did not validly waive his right to counsel). See Beach, 592 So.2d at 239.
In response, the State contended that the United States Supreme Courtin a decision focused on federal Sixth Amendment doctrine (i.e., Nichols)  overruled this Court's decisions in Hlad and Beach. The circuit court rejected this argument. Additionally, the circuit court, apparently sub silentio,[4] rejected the State's argument that Mr. Kelly had validly waived his right to counsel when he pled no contest to his 1995 and 1997 misdemeanor DUI charges. The evidentiary-hearing transcript reveals the following relevant facts: (1) Kelly's counsel contended that the plea forms Kelly signed in 1995 and 1997 misrepresented a Florida criminal defendant's right to counsel (they stated that the defendant only had a right to court-appointed counsel if (a) he could not afford counsel, and (b) the judge was currently considering[5] jail time as a punishment); (2) the records that the State produced regarding Kelly's 1995 and 1997 misdemeanor DUI pleas failed to demonstrate that the judges engaged in proper colloquies with Kelly concerning his right to counsel; (3) Kelly recalled advising the sentencing judges that he could not afford an attorney, but did not recall whether the judges asked him if he wanted an attorney appointed; (4) Kelly pled no contest because he "thought the [no contest] plea was the.... easiest financial situation for [him]"; and (5) when asked whether he understood he had a right to an attorney, Kelly responded that "[he] understood ... [he] couldn't afford an attorney."[6]
*1035 Following the evidentiary hearing, the circuit court entered an order dismissing the State's felony DUI information for lack of jurisdiction. The State appealed to the Fourth District Court of Appeal. In the district court, the State asserted that the circuit court had abused its discretion by following the decisions of this Court in Hlad and Beach instead of the decision of the United States Supreme Court in Nichols. In response, Mr. Kelly contended that Hlad and Beach remain controlling authority in Florida's criminal courts unless and until this Court decides to alter its precedent. The Fourth District affirmed the order of the circuit court, but certified the above-stated question as one of great public importance due to the confusion surrounding whether Hlad and Beach remain binding precedent post-Nichols.

II. ANALYSIS
This case presents the following issues: (1) whether Mr. Kelly carried his burden of production under Beach; and if so, (2) whether this Court will continue to follow Hlad and Beach or will, alternatively, adopt the United States Supreme Court's Nichols decision as part of Florida's right-to-counsel jurisprudence. In deciding these issues, we must first address the effect of Mr. Kelly's deficient plea forms. Next we need to clarify, under Beach, the significance of a record that is silent as to whether the defendant's prior convictions were supported by proper plea colloquies. We also consider any differences or distinguishing factors between Florida's misdemeanor right-to-counsel standard and that presented as the federal standard. Finally, we must analyze whether Nichols should be positioned as persuasive precedent and as a guidepost when interpreting article I, section 16 of the Florida Constitution. We conclude that we should reaffirm a modified version of our Hlad/Beach framework, which is explicitly premised upon independent state-law grounds.

A. The Effect of the Deficient Plea Forms
Mr. Kelly contends that his 1995 and 1997 plea forms did not accurately reflect a criminal defendant's right to counsel in Florida. We agree with this assessment as applied to the facts of this case. The versions of Florida Rule of Criminal Procedure 3.111(b)(1) that applied to each of Kelly's no-contest pleas are identical. In relevant part, these provisions indicate that Florida is a "prospective imprisonment" jurisdiction that provides indigent criminal defendants a right to counsel in all criminal prosecutions "punishable by imprisonment," except in misdemeanor or ordinance-violation cases where the trial judge affirmatively certifies in writingbefore trialthat the defendant will not face a term of imprisonment for the charged offense. See Fla. R.Crim. P. 3.111(b)(1) (1992). In other words, in Florida, indigent defendants have a right to counsel in all criminal prosecutions punishable by imprisonmenteven misdemeanor prosecutionsunless the trial judge "opts out" by providing the defendant a written, pretrial certification that the defendant will not be imprisoned for the charged offense. See id.; see also Fla. R.Crim. P. 3.160 (advising indigents of the right to appointed counsel); § 27.51, Fla. Stat. (2003) (mandating that the public defender *1036 represent indigents charged with violations of chapter 316, Florida Statutes; DUI is a chapter 316 offense punishable by imprisonment).
This is not the legal landscape Mr. Kelly's State-prepared plea forms described. Rather, they provided the misleading impression that an indigent criminal defendant lacks a right to counsel so long as the trial judge is not currently considering jail time as an appropriate sentence. This mischaracterization relieved the trial judges of their duty to make the affirmative, written, pretrial certification that the rule then required, and still requires today in a slightly modified form. See Fla. R.Crim. P. 3.111(b)(1) ("In the discretion of the court, counsel does not have to be provided to an indigent person in a prosecution for a misdemeanor or violation of a municipal ordinance if the judge, at least 15 days prior to trial, files in the cause a written order of no incarceration certifying that the defendant will not be incarcerated...." (emphasis supplied) (the current version of this rule permits the defendant or defense counsel to waive the fifteen-day requirement)). Consequently, even if Mr. Kelly read and understood these plea forms, he would not have been properly informed of his right to counsel.
Nevertheless, if the misdemeanor trial judges had properly executed on-the-record plea colloquies, which indicated that Mr. Kelly had a right to counsel but chose to waive that right, these hypothetical colloquies could have cured this error. Cf., e.g., Ramos v. Rogers, 170 F.3d 560, 565 (6th Cir.1999) ("[A] state trial court's proper colloquy can be said to have cured any misunderstanding [the defendant] may have had about the consequences of his plea."). The record in this case, however, is silent as to whether there were proper colloquies with Mr. Kelly before he pled no contest to his prior misdemeanor DUI charges.

B. The Significance of a Silent Record Under Beach

It is undisputed that: (1) Mr. Kelly's 1995 and 1997 misdemeanor DUI offenses were each punishable by more than six months' imprisonment; (2) Kelly was indigent and, thus, entitled to court-appointed counsel; and (3) counsel was not appointed to represent Kelly. However, the State and Kelly dispute the significance of the absence of an on-the-record plea colloquy, which could have confirmed Kelly's alleged waiver of counsel. Kelly relies upon Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), for the proposition that courts may not presume a waiver of constitutional rights from a silent record. It is well-established that the State cannot do so in direct proceedings; however, the same cannot be said concerning collateral proceedings. Compare Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) ("Presuming waiver from a silent record is impermissible.... Anything less is not waiver." (citations and quotations omitted)), with Parke v. Raley, 506 U.S. 20, 29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) ("To import Boykin's presumption of invalidity [regarding direct review of a conviction based upon an uninformed guilty plea] into th[e] very different context [of collateral review of a prior conviction's validity] would, in our view, improperly ignore another presumption deeply rooted in our jurisprudence: the `presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights.").
The United States Supreme Court has thus modified Boykin's broad rule that a waiver of constitutional rights cannot be implied from a silent record by restricting that rule to direct proceedings. The Court stated in Parke:
On collateral review, we think it defies logic to presume from the mere unavailability *1037 of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights. In this situation, Boykin does not prohibit a state court from presuming, at least initially, that a final judgment of conviction offered for purposes of sentence enhancement was validly obtained.
506 U.S. at 30, 113 S.Ct. 517 (emphasis supplied). As the Parke Court recognized, the states remain free to adopt different approaches, which afford greater protection for defendants' constitutional rights. See Parke, 506 U.S. at 34, 113 S.Ct. 517 ("[W]e hold that the Due Process Clause permits a State to impose a burden of production on a recidivism defendant who challenges the validity of a prior conviction under Boykin." (emphasis supplied)).
This Court appears to have resolved this issueat least as far as felony DUI is concernedin State v. Beach, 592 So.2d 237 (Fla.1992), which was decided just over one month after the decision of the United States Supreme Court in Parke. In Beach, we clarified the procedural framework required to assert an action based on Hlad error (i.e., a claim that the State may not use prior uncounseled misdemeanors to enhance a later offense from a misdemeanor to a felony). We placed "the initial burden of showing entitlement to counsel" on the defendant because Hlad error does not exist if the defendant did not possess a right to counsel in the prior proceedings. Beach, 592 So.2d at 239. The initial burden, however, appears minimalistic, and isas explained below properly viewed as a burden of production. See Black's Law Dictionary 209 (8th ed. 2004) ("[B]urden of production. A party's duty to introduce enough evidence on an issue to have the issue decided by the fact-finder, rather than decided against the party in a peremptory ruling....").
The defendant need only

assert under oath: (1) that the offense involved was punishable by more than six months of imprisonment or that the defendant was actually subjected to a term of imprisonment; (2) that the defendant was indigent and, thus, entitled to court-appointed counsel; (3) [that] counsel was not appointed; and (4) [that] the right to counsel was not waived.
Beach, 592 So.2d at 239 (emphasis supplied). "If the defendant sets forth these [minimal] facts under oath, then the burden shifts to the state to show [1] either that counsel was provided or [2] that the right to counsel was validly waived." Id. (emphasis supplied). Hence, if the defendant adequately presents each of the four Beach elementsthereby saddling the State with a burden of persuasionthe State cannot then point to a silent record to claim that a purely hypothetical plea colloquy cured any error surrounding the waiver issue. See Black's Law Dictionary 209 (8th ed. 2004) ("[B]urden of persuasion. A party's duty to convince the fact-finder to view the facts in a way that favors that party." (emphasis supplied)).
Several factors support our interpretation of the Beach framework as placing a burden of production upon the defendant, which, if satisfied, shifts a burden of persuasion to the State to prove either that the trial court appointed counsel or that the defendant waived that right. First, this Court has held on several occasions that when the State prosecutes a defendant for felony DUI, the State has the additional burden of proving "the existence of three or more prior misdemeanor DUI convictions." State v. Harbaugh, 754 So.2d 691, 694 (Fla.2000). Hence, "the requirement of three prior misdemeanor DUI[s] ... is considered an element of felony DUI." State v. Finelli, 780 So.2d 31, *1038 33 (Fla.2001) (emphasis supplied); see also State v. Woodruff, 676 So.2d 975, 977 (Fla. 1996) (same). As a result, the State has the burden of proving three valid prior misdemeanor convictions beyond a reasonable doubt, while the defendant shares no comparable burden. See In re Winship, 397 U.S. 358, 361-65, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (holding that it is the prosecution's constitutional burden to prove each element of a criminal offense beyond a reasonable doubt); Burgett v. Texas, 389 U.S. 109, 114-15, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967) (holding that convictions obtained in violation of a defendant's right to counsel are void).[7]
Second, the United States Supreme Court has characterized the initial burden placed upon a recidivist defendant challenging the validity of prior convictions as "a burden of production." Parke, 506 U.S. at 34, 113 S.Ct. 517 (emphasis supplied). Third, where the written plea agreement is deficient on its faceas it appears to be in this casethe State should bear the risk of loss if it cannot produce a record of the plea colloquy, as "[t]he language of [Florida Rule of Criminal Procedure] 3.172(c) is mandatory. The rule does not permit a written plea agreement to substitute for an on-the-record plea colloquy," and "the plea colloquy must reflect that the defendant has personally been addressed pursuant to the requirements of Rule 3.172(c) and has expressed an understanding of the rights guaranteed therein." Perry v. State, 900 So.2d 755, 757 (Fla. 4th DCA 2005) (quoting Perriello v. State, 684 So.2d 258, 260 (Fla. 4th DCA 1996)); see also Fla. R.Crim. P. 3.111(d)(2) (1992) ("A defendant shall not be deemed to have waived the assistance of counsel until the entire process of offering counsel has been completed and a thorough inquiry has been made into both the accused's comprehension of that offer and the accused's capacity to make an intelligent and understanding waiver."). Fourth and finally, this Court held in Beachpost-Parkethat "[a]bsent such evidence in the record of the trial court's prior proceedings, waiver cannot be presumed." Beach, 592 So.2d at 239 (addressing a collateral challenge to a prior DUI conviction) (emphasis supplied).
Given the facts of this case, the State cannot, on one hand, fail to acknowledge the inaccuracy inherent in its plea forms and then, on the other hand, claim protection under a presumption of validity that normally attaches to final judgments. Mr. Kelly's satisfactory Beach affidavit, his presentation of facially misleading plea forms, and his testimony at the evidentiary hearing satisfied the Beach burden of production. *1039 This created prima facie evidence that Kelly did not validly waive his right to counsel.
In response to that evidence, the State failed to satisfy its burden of proving that Kelly was either provided counsel or validly waived that right. The State conceded that Kelly did not receive counsel and then simply attempted to rely on the same inaccurate plea forms as creating a knowing, intelligent, and voluntary waiver of the right to counsel. Cf. Fla. R.Crim. P. 3.111(d)(1) (1992) ("The failure of a defendant to request appointment of counsel or the announced intention of a defendant to plead guilty shall not, in itself, constitute a waiver of counsel at any stage of the proceedings." (emphasis supplied)). The danger of misleading plea forms is self-evident; if an indigent defendant, like Mr. Kelly, cannot afford an attorney and believes that he has no right to appointed counsel, he is more likely to plead guilty or no contest even when he did not commit the underlying offense. For these reasons, the State may not rely upon a misleading plea formand a record which is silent concerning whether the defendant received a constitutionally sufficient plea colloquyto contend that the defendant knowingly, intelligently, and voluntarily waived his or her right to counsel. Cf., e.g., Durocher v. Singletary, 623 So.2d 482, 485 (Fla.1993) ("[T]he [S]tate has an obligation to assure that the waiver of ... counsel is knowing, intelligent, and voluntary." (emphasis supplied)). Voluntariness is a necessarybut not a sufficientcondition to demonstrate an effective waiver; in addition, the State must also establish a knowing and intelligent relinquishment or abandonment of a known right or privilege. See, e.g., Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). If a defendant does not intelligently understand when he or she is entitled to the representation of appointed counsel, then a fortiori the defendant cannot effectively waive that right. This is why we require accurate plea forms and accurate plea colloquies. See Fla. R.Crim. P. 3.111(d)(2), 3.171, 3.172; see also Perry, 900 So.2d at 757 (explaining that rule 3.172(c) and associated case law do not permit a written plea agreement to serve as a substitute for a constitutionally sufficient plea colloquy).
The State, therefore, did not carry its Beach burden of proving that Kelly validly waived his right to counsel with regard to his 1995 and 1997 misdemeanor DUI convictions (further, the State has not undertaken this responsibility with regard to Kelly's 1987 conviction). With that question resolved, we now address the second issue presented in this case: whether this Court will continue to follow Hlad and Beach or will, alternatively, incorporate Nichols as part of Florida's right-to-counsel jurisprudence.

C. Florida's Misdemeanor Right-to-Counsel Standard
The State contends that Florida's misdemeanor right-to-counsel standard should mirror the federal standard enunciated in Nichols. However, the Florida standard already differs from its federal counterpart. Therefore, we decline to follow a more limited federal standard that would afford Florida's criminal defendants less constitutional protection, or fewer constitutional rights, than they currently enjoy under the Florida Constitution and under Hlad and Beach.[8]
*1040 In contrast to search-and-seizure jurisprudence, the law of Florida may afford greater right-to-counsel protections than those afforded by the Sixth Amendment. Cf. art. I, § 12, Fla. Const. (mandating that United States Supreme Court Fourth Amendment precedent control Florida search-and-seizure jurisprudence). Under established Florida law, the right of indigents to appointed counsel in misdemeanor cases differs from its federal counterpart. In Argersinger v. Hamlin, 407 U.S. 25, 35-40, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the United States Supreme Court appeared to hold that prospective imprisonment for a misdemeanor offense guarantees indigents a right to appointed counsel, but the Court clarified in Scott v. Illinois, 440 U.S. 367, 373-74, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), that under the Sixth Amendment this right is limited to cases in which the defendant is actually imprisoned for the charged offense. Florida, however, has provided a different standard through its Constitution, Rules of Criminal Procedure, and the Florida Statutes. See art. I, §§ 2, 16, Fla. Const.; Fla. R.Crim. P. 3.111, 3.160; § 27.51, Fla. Stat. (2003). In Florida, indigent criminal defendants have a right to appointed counsel "for offenses punishable by imprisonment." Fla. R.Crim. P. 3.111(b)(1) (1992) (emphasis supplied).
This standard provides a more broadly constructed right to counsel than the federal actual-imprisonment standard, as it encompasses all cases in which imprisonment is a prospective penalty. The trial judge only possesses restricted discretion to limit this right by certifying, in writing, before trial that the defendant will not be imprisoned. See Fla. R.Crim. P. 3.111(b)(1) (1992). Florida Rule of Criminal Procedure 3.160 further supports this divergent standard by providing:
Prior to arraignment of any person charged with the commission of a crime, if he or she is not represented by counsel, the court shall advise the person of the right to counsel and, if he or she is financially unable to obtain counsel, of the right to be assigned court-appointed counsel to represent him or her at the arraignment and at all subsequent proceedings.

Fla. R.Crim. P. 3.160(e) (emphasis supplied). Moreover, section 27.51(1)(b)(1)-(2), Florida Statutes, provides:
The public defender shall represent, without additional compensation, any person determined to be indigent ... and ... [u]nder arrest for, or charged with ... [1][a] misdemeanor authorized for prosecution by the state attorney[,] [or] [2][a] violation of chapter 316 punishable by imprisonment....
(Emphasis supplied.) (DUI is a chapter 316 offense punishable by imprisonment.)
These rules and statutory sections unambiguously differentiate an indigent criminal defendant's right to counsel in a misdemeanor case under Florida law from that of a similarly situated defendant under federal law. The courts of this state have also recognized this distinction. See, e.g., Case v. State, 865 So.2d 557, 558 (Fla. 1st DCA 2003) ("A defendant who is charged with a misdemeanor punishable by possible imprisonment is entitled to counsel unless the judge timely issues a written order guaranteeing that the defendant *1041 will never be incarcerated as a result of the conviction." (emphasis supplied)).
Florida law draws the entitlement line at prospective punishment (i.e., offenses punishable by imprisonment), while federal law draws a less protective entitlement line at actual imprisonment (i.e., there is no right to counsel unless the defendant is actually incarcerated as a result of the offense). The committee comments to Florida Rule of Criminal Procedure 3.111 further emphasize the difference between the Florida and federal standards. Compare Fla. R.Crim. P. 3.111, committee note (1972) ("The committee determined that possible deprivation of liberty for any period makes a case serious enough that the accused should have the right to counsel." (emphasis supplied)), with Scott, 440 U.S. at 373-74, 99 S.Ct. 1158 ("[A]ctual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment[that standard] is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel." (emphasis supplied)).
The instant case provides an excellent example of the practical differences between the federal actual-imprisonment standard and the Florida prospective-imprisonment standard. Here, an indigent criminal defendant pled no contest to misdemeanor DUI charges without having been provided appointed counsel, despite his "right to be assigned court-appointed counsel to represent him ... at the arraignment and at all subsequent proceedings." Fla. R.Crim. P. 3.160(e). Moreover, there is no indication in the record that either trial judge in Mr. Kelly's cases certified, in writing, before trial that Kelly would not face imprisonment for the charged offenses. Cf. Fla. R.Crim. P. 3.111(b)(1) (1992). Finally, the record does not reflect that either of the trial judges engaged in a proper colloquy with Kelly regarding his right to counsel. Cf. Fla. R.Crim. P. 3.111(d)(2) (1992).
Under Florida law, Mr. Kelly therefore maintained a right to counsel pursuant to Rule of Criminal Procedure 3.111 because misdemeanor DUI is an offense punishable by imprisonment. As a corollary, Kelly was entitled to appointed representation from the Public Defender's Office under section 27.51, Florida Statutes. In contrast, under federal law, Kelly would not have had a right to counsel because he was not imprisoned as a result of either plea. See Scott, 440 U.S. at 373-74, 99 S.Ct. 1158.
This Court clearly stated in Traylor v. State, 596 So.2d 957, 962 (Fla.1992):
[W]hen called upon to construe their bills of rights, state courts should focus primarily on factors that inhere in their own unique state experience, such as the express language of the constitutional provision, its formative history, both preexisting and developing state law, evolving customs, traditions and attitudes within the state, the state's own general history, and finally any external influences that may have shaped state law.
Id. (emphasis supplied). Here, a consideration of these factors leads to the conclusion that Florida provides a broader right to counsel under article I, section 16 of our state Constitution than that provided by the federal courts under the Sixth Amendment. See, e.g., Fla. R.Crim. P. 3.111, 3.160; § 27.51, Fla. Stat. (2003) (adopting a prospective-imprisonment scheme for determining whether defendants have a right to counsel in misdemeanor cases).
Our interpretation of the right to counsel under article I, section 16 of the Florida Constitution should, therefore, reflect Justice Brennan's admonishment:

*1042 [T]he decisions of the [United States Supreme] Court are not, and should not be, dispositive of questions regarding rights guaranteed by counterpart provisions of state law. Accordingly, such decisions are not mechanically applicable to state law issues, and state court judges and the members of the bar seriously err if they so treat them. Rather, state court judges, and also practitioners, do well to scrutinize constitutional decisions by federal courts, for only if they are found to be logically persuasive and well-reasoned, paying due regard to precedent and the policies underlying specific constitutional guarantees, may they properly claim persuasive weight as guideposts when interpreting counterpart state guarantees.
William J. Brennan, Jr., State Constitutions and the Protection of Individual Rights, 90 Harv. L.Rev. 489, 502 (1977) (emphasis supplied) (footnote omitted). Thus, an independent analysis under the Florida Constitution is necessary to remain faithful to our statement regarding Florida's Declaration of Rights that "[n]o other broad formulation of legal principles, whether state or federal, provides more protection from government overreaching or a richer environment for self-reliance and individualism than does this `stalwart set of basic principles.'" Traylor, 596 So.2d at 963 (quoting State ex rel. Davis v. City of Stuart, 97 Fla. 69, 120 So. 335, 347 (1929)).

D. Nichols Is Not Controlling Under Article I, Section 16
It is true that in Hlad and Beach this Court relied in part upon Baldasar v. Illinois, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), which the Supreme Court subsequently overruled in Nichols v. United States, 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994). However, it is equally true that the federal Constitution generally sets the floor, not the ceiling, with regard to the extent of personal rights and freedoms afforded by the State of Florida. See, e.g., Traylor, 596 So.2d at 962; In re T.W., 551 So.2d 1186, 1191 (Fla.1989) ("State constitutions, too, are a font of individual liberties, their protections often extending beyond those required by the Supreme Court's interpretation of federal law.... [W]ithout [independent state law], the full realization of our liberties cannot be guaranteed." (quoting Brennan, 90 Harv. L.Rev. at 491) (emphasis supplied)); State v. Douse, 448 So.2d 1184, 1185 (Fla. 4th DCA 1984) (holding that the right to counsel attaches at an earlier point during the prosecutorial process under Florida law than under federal law). Moreover, this Court is the ultimate "arbiter[ ] of the meaning and extent of the safeguards provided under Florida's Constitution." Busby v. State, 894 So.2d 88, 102 (Fla.2004). In fulfillment of that constitutional role, we specifically held in Traylor, 596 So.2d at 969-70, that article I, section 16 of the Florida Constitution (right to counsel), read in light of article I, section 2 of that same document (equal protection), mandates that
the right of indigent defendants to [the] assistance of court-appointed counsel in criminal prosecutions is constitutionally required.... The rule is grounded in Sections 2 and 16 of our state Constitution.

(Emphasis supplied.) Further, we clarified that this rule is not subsumed by, or derived from, the federal Sixth Amendment:
In light of the widely-recognized and oftentimes decisive role the lawyer plays in the judicial process, we conclude that our state Constitution requires that the Section 16 right to counsel be made available to impoverished defendants. No Florida citizen can be deprived of life or liberty in a criminal proceeding *1043 simply because he or she is too poor to establish his or her innocence.

Traylor, 596 So.2d at 969 (emphasis supplied). In opposition to this precedent, the dissent proceeds under the incorrect assumption that there is no independent right to the assistance of appointed counsel under the Florida Constitution and that, consequently, this right is secured exclusively through the Sixth Amendment to the United States Constitution. However, the dissent overlooks the true content of our decision in Traylor, including its state-law posture.[9] The reasoning of the dissent is thus unsound from its inception because it assumes that we lack the ability to independently interpret the Florida Constitution. We establish no new precedent in this regard as asserted by the dissent; we specifically held in Traylorand reaffirm today-that article I, sections 2 and 16 of our state Constitution afford indigent criminal defendants a free-standing right to appointed counsel. See 596 So.2d at 969-70. Owen did not even mention this aspect of the Traylor decision.
For reasons unexplained by our dissenting colleague, he would have us unquestionably follow the decisions of the United States Supreme Court when we are faced with questions of state law. In reply, we explain that we have the duty to independently examine and determine questions of state law so long as we do not run afoul of federal constitutional protections or the provisions of the Florida Constitution that require us to apply federal law in state-law contexts. No such considerations restrict our ability to definitively decide this case.
We live in a federalist republic, with multiple, independent levels of government, *1044 rather than in a unitary state, which, in contrast, is controlled by a centralized governing regime and court system. Far better writers than we have explained this dual system of republican government. For example, writing as Publius, James Madison explained this foundational aspect of our nation, which has subsequently been labeled "dual" or "cooperative federalism,"[10] by stating:
In a single republic, all the power surrendered by the people, is submitted to the administration of a single government; and the usurpations are guarded against, by a division of the government into distinct and separate departments. In the compound republic of America, the power surrendered by the people, is first divided between two distinct levels of government [referring to the national and state governments], and then the portion allotted to each subdivided among distinct and separate departments. Hence a double security arises to the rights of the people. The different governments will control each other; at the same time that each will be controlled by itself.
The Federalist No. 51, at 292 (James Madison) (M'Carty & Davis, Philadelphia, PA, Glazier & Co., Hallowell, ME 1826). In keeping with this foundational concept, our decision today reflects the differences that exist between Florida and federal law and promotes a "double security" for the constitutional rights of Floridians.
Unsurprisingly, our acknowledged role as the definitive arbiter of the Florida Constitution requires a unique standard of review in this case:
When called upon to decide matters of fundamental rights, Florida's state courts are bound under federalist principles to give primacy to our state Constitution and to give independent legal import to every phrase and clause contained therein. We are ... [thus] bound under our Declaration of Rights to construe each provision freely in order to achieve the primary goal of individual freedom and autonomy.
Traylor, 596 So.2d at 962-63. Accordingly, we examine Nichols, and reexamine our current Hlad/Beach framework, to determine if either comports with Florida's prospective-imprisonment misdemeanor right-to-counsel standard.
To properly frame this inquiry, we must first explore the United States Supreme Court precedent that preceded and eventually led to Nichols. Four major Supreme Court decisions have directly shaped indigent defendants' Sixth and Fourteenth Amendment right to appointed counsel in misdemeanor cases: Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), Baldasar v. Illinois, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), overruled by Nichols v. United States, 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994), and Nichols.

i. Argersinger and Scott

In Argersingera case that resulted from this Court's holding in State ex rel. Argersinger v. Hamlin, 236 So.2d 442 (Fla.1970)the United States Supreme Court explained that the expansive right-to-counsel language appearing in Gideon v. Wainwright[11] was not limited to felony cases. The High Court explained:

*1045 [T]he problems associated with misdemeanor and petty offenses often require the presence of counsel to insure the accused a fair trial.... "[T]he prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or `petty' matter and may well result in quite serious repercussions affecting his career and his reputation."
... [A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.
Argersinger, 407 U.S. at 36-37, 92 S.Ct. 2006 (emphasis supplied) (footnotes omitted) (quoting Baldwin v. New York, 399 U.S. 66, 73, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970)). The Court also addressed the importance of appointed counsel for defendants when entering pleas:
Beyond the problem of trials and appeals is that of the guilty plea, a problem which looms large in misdemeanor as well as in felony cases. Counsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution.
Id. at 34, 92 S.Ct. 2006 (emphasis supplied).
Some justices interpreted the "prospect of imprisonment" language appearing in Argersinger as indicating that the right to counsel attached whenever the charged offense was punishable by imprisonment. See, e.g., Scott v. Illinois, 440 U.S. 367, 382-89, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) (Brennan, J., dissenting) (advocating that the Court adopt an "authorized imprisonment" standard similar to the one Florida employs today). In Scott, however, the High Court clarified that Argersinger limited indigent defendants' Sixth Amendment right to appointed counsel to cases in which the defendant is "actual[ly] imprison[ed]." Scott, 440 U.S. at 373, 99 S.Ct. 1158. But, in clarifying Argersinger, Scott did not disturb the Argersinger Court's rationale for ensuring that indigent defendants do not face jail time as the result of uncounseled misdemeanorsuncounseled misdemeanors lack the requisite reliability to impose imprisonment. See Argersinger, 407 U.S. at 35-36, 92 S.Ct. 2006 ("`The misdemeanor trial is characterized by insufficient and frequently irresponsible preparation on the part of the defense, the prosecution, and the court. Everything is rush, rush.' ... There is evidence of the prejudice which results to misdemeanor defendants from this `assembly-line justice.'" (citation omitted)); see also Baldasar, 446 U.S. at 227, 100 S.Ct. 1585 (Marshall, J., concurring) ("We should not lose sight of the underlying rationale of Argersinger, that unless an accused has `the guiding hand of counsel at every step in the proceedings against him,'... his conviction is not sufficiently reliable to support the severe sanction of imprisonment." (emphasis supplied) (quoting Powell, 287 U.S. at 68-69, 53 S.Ct. 55)).

ii. Baldasar

Baldasar represented the United States Supreme Court's attempt to apply Argersinger and Scott's actual-imprisonment standard to an Illinois recidivism statute. Petitioner Baldasar had previously been convicted of misdemeanor theft. See Baldasar, *1046 446 U.S. at 222-23, 100 S.Ct. 1585. In the prior proceeding, he was unrepresented and did not waive his right to counsel. See id. As punishment, he paid a fine of $159 and received a one-year probation sentence. See id. Six months later, Illinois charged him with stealing a $29 showerhead, which the State sought to prosecute as a felony based on Baldasar's prior uncounseled misdemeanor conviction. See id.
The Illinois courts permitted the prosecution to introduce evidence of the prior uncounseled misdemeanor conviction to enhance Baldasar's subsequent offense from a misdemeanor to a felony. See id. Baldasar objected, contending that this enhancement violated the rule of Argersinger and Scott. In other words, Illinois was increasing his punishment as a direct result of his prior uncounseled misdemeanor conviction and that uncounseled misdemeanor conviction, which was unreliable for the purpose of imposing imprisonment in the first instance, remained unreliable for the purpose of enhancing his imprisonment in a collateral proceeding. See id. at 223-24, 100 S.Ct. 1585.
A four-justice plurality[12] agreed with Baldasar, while a four-justice dissent did not. See id. at 224, 100 S.Ct. 1585 (Stewart, J., concurring, joined by Brennan and Stevens, JJ.) ("[P]etitioner ... was sentenced to an increased term of imprisonment only because he had been convicted in a previous prosecution in which he had not had the assistance of appointed counsel in his defense. It seems clear to me that this prison sentence violated the constitutional rule of Scott."); id. at 227, 100 S.Ct. 1585 (Marshall, J., concurring, joined by Brennan and Stevens, JJ.) ("The sentence petitioner actually received would not have been authorized by statute but for the previous conviction. It was imposed as a direct consequence of that uncounseled conviction and is therefore forbidden under Scott and Argersinger."); id. at 230-34, 100 S.Ct. 1585 (Powell, J., dissenting, joined by Burger, C.J., White and Rehnquist, JJ.) (claiming that the enhanced punishment Baldasar received was not imposed as a result of his prior misdemeanor, and thus did not violate Argersinger or Scott).
Justice Blackmun, meanwhile, developed his own approach without addressing the issue framed by the Court.[13] Instead, he adopted a hybrid construct, which he lifted verbatim from his dissent in Scott. His *1047 approach combined Argersinger and Scott's actual-imprisonment standard with a right-to-jury standard articulated by the Supreme Court in Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Justice Blackmun, thus, offered the following rule in his concurrence:
[A]n indigent defendant in a state criminal case must be afforded appointed counsel whenever the defendant is prosecuted for a nonpetty criminal offense, that is, one punishable by more than six months' imprisonment, see Duncan v. Louisiana, 391 U.S. 145[, 88 S.Ct. 1444, 20 L.Ed.2d 491] (1968); Baldwin v. New York, 399 U.S. 66[, 90 S.Ct. 1886, 26 L.Ed.2d 437] (1970), or whenever the defendant is convicted of an offense and is actually subjected to a term of imprisonment, Argersinger v. Hamlin, 407 U.S. 25[, 92 S.Ct. 2006, 32 L.Ed.2d 530] (1972).
446 U.S. at 229, 100 S.Ct. 1585 (Blackmun, J., concurring) (quoting Scott, 440 U.S. at 389-90, 99 S.Ct. 1158 (Blackmun, J., dissenting)). This is the same rule that we adopted in Hlad v. State, 585 So.2d 928, 929-30 (Fla.1991).
The most accurate description of Baldasar appears to be the one that Justice Souter later offered in Nichols: "[T]he Baldasar Court was in equipoise, leaving a decision in the same posture as an affirmance by an equally divided Court, entitled to no precedential value." Nichols, 511 U.S. at 750, 114 S.Ct. 1921 (Souter, J., concurring in the judgment). Cf. Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) ("[W]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, `the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" (as recognized by numerous courts, it is difficult to determine Baldasar's narrowest grounds)). But see Kirsten M. Nelson, Note, Nichols v. United States and the Collateral Use of Uncounseled Misdemeanors in Sentence Enhancement, 37 B.C. L.Rev. 557, 582 (1996) ("All three concurring opinions in Baldasar share one common and narrow reasoning: the deprivation of liberty cannot occur without the right to counsel." (footnote omitted)).

iii. Nichols' Contrast With the Sixth Amendment Reliability Concern
In 1994, the United States Supreme Court overruled Baldasar in Nichols v. United States. See Nichols, 511 U.S. at 748-49, 114 S.Ct. 1921, overruling Baldasar, 446 U.S. at 222-23, 100 S.Ct. 1585. In the process, the Court endorsed and adopted the Baldasar dissent as the Nichols majority opinion: "[A]n uncounseled conviction valid under Scott [because no imprisonment was imposed] may be relied upon to enhance the sentence for a subsequent offense, even though that sentence entails imprisonment." Nichols, 511 U.S. at 746-47, 114 S.Ct. 1921 (emphasis supplied). Nichols' factual posture, however, differed from Baldasar in an important respect. While Baldasar involved a recidivism statute and the use of an uncounseled misdemeanor to enhance a subsequent offense from a misdemeanor to a felony, Nichols involved the consideration of a defendant's prior uncounseled misdemeanor under the federal Sentencing Guidelines. Justice Souter addressed the importance of this factual distinction in his concurrence:
There is an obvious and serious argument that the line drawn in Scott is crossed when, as Justice Stewart put it in Baldasar, a defendant is "sentenced [under a recidivism statute] to an increased term of imprisonment only because he had been convicted in a previous prosecution in which he had not had *1048 the assistance of appointed counsel in his defense."
Fortunately, the difficult constitutional question that argument raises need not be answered in deciding this case, for unlike the sentence-enhancement scheme involved in Baldasar, the United States Sentencing Commission's Guidelines... do not provide for automatic enhancement based on prior uncounseled convictions....
Under the Guidelines ... the role prior convictions play in sentencing is presumptive, not conclusive, and a defendant has the chance to convince the sentencing court of the unreliability of any prior valid but uncounseled convictions....
Nichols, 511 U.S. at 750-52, 114 S.Ct. 1921 (Souter, J., concurring in the judgment) (citations omitted) (some emphasis supplied).
Therefore, Justice Souter contrasted the use of uncounseled misdemeanors under the federal Sentencing Guidelines with the use of such misdemeanors under recidivism statutes similar to the one at issue in this case:
Because the Guidelines allow a defendant to rebut the negative implication to which a prior uncounseled conviction gives rise, they do not ignore the risk of unreliability associated with such a conviction.... Where concern for reliability is accommodated, as it is under the Guidelines, nothing in the Sixth Amendment or our cases requires a sentencing court to ignore the fact of a valid uncounseled conviction, even if that conviction is a less confident indicator of guilt than a counseled one would be.
Id. at 752-53, 114 S.Ct. 1921 (Souter, J., concurring in the judgment) (emphasis supplied). Hence, Justice Souter would limit the use of prior uncounseled misdemeanors to situations "where [Argersinger's] concern for reliability is accommodated." Id. at 753, 114 S.Ct. 1921 (Souter, J., concurring in the judgment).[14]
The Nichols majority, however, did not address the Sixth Amendment reliability concern, which the Court has subsequently reaffirmed as "the key Sixth Amendment inquiry." Alabama v. Shelton, 535 U.S. 654, 667, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002) ("[T]he key Sixth Amendment inquiry [is] whether the adjudication of guilt corresponding to the prison sentence is sufficiently reliable to permit incarceration." (emphasis supplied)). Furthermore, in adopting the Baldasar dissent as the Nichols majority opinion, the High Court appears to have imported all of its attendant issues. For example, the Baldasar dissent and the Nichols majority opinion do not seem to logically follow from Argersinger and Scott. Argersinger and Scott held that the Sixth Amendment right to counsel in misdemeanor cases is limited to cases where the defendant is actually imprisoned, and they did so because of the lack of reliability associated with uncounseled misdemeanors. See Argersinger, 407 U.S. at 34-37, 92 S.Ct. 2006 (outlining the reliability concerns associated with uncounseled misdemeanors); Scott, 440 U.S. at 373-74, 99 S.Ct. 1158 (reaffirming Argersinger in toto). Thus, if an uncounseled misdemeanor is too unreliable to impose *1049 imprisonment in a direct proceeding, it remains too unreliable to enhance imprisonment in a collateral proceeding; the key issue remains its unreliability for purposes of imposing imprisonment.
In contrast, the Baldasar dissent and the Nichols majority opinion endorsed a somewhat incongruous rule that deems an uncounseled conviction invalid for imposing a prison term directly, but valid for imposing a prison term collaterally, which some justices have characterized as "an illogical and unworkable deviation from [the Supreme Court's] previous cases," and as not addressing the underlying Sixth Amendment reliability concern. Baldasar, 446 U.S. at 228-29, 100 S.Ct. 1585 (Marshall, J., concurring) (referencing the Baldasar dissent, which became the position of the majority in Nichols).[15]
The justifications underpinning Nichols' Sentencing Guidelines rationale are unpersuasive when applied to a recidivism statute, under which the defendant's prior misdemeanor convictions constitute an element of his or her later felony offense. The Baldasar dissent and the Nichols majority included dicta from an 1895 double jeopardy casewhich when used there made senseand proceeded to use it in a context for which it was perhaps ill-suited. See Baldasar, 446 U.S. at 232, 100 S.Ct. 1585 (Powell, J., dissenting) (citing Moore v. Missouri, 159 U.S. 673, 677, 16 S.Ct. 179, 40 L.Ed. 301 (1895); Oyler v. Boles, 368 U.S. 448, 451, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962) (reaffirming Moore in the context of an equal protection and due process challenge)); Nichols, 511 U.S. at 747, 114 S.Ct. 1921 (exhibiting the same reasoning as the Baldasar dissent). In particular, the observation that the High Court has "consistently ... sustained repeat-offender laws as penalizing only the last offense committed by the defendant,"[16] makes sense when one is determining whether a criminal defendant is being tried and punished for the same offense twice (i.e., a double-jeopardy violation), because at least one element of the subsequent offense differs from that of the previous offense(s).[17] But, that reasoning does not seem to make sense in the context of a rule holding that, on the one hand, uncounseled misdemeanor convictions are unreliable and invalid for purposes of imposing imprisonment directly but, on the other, valid for imposing imprisonment collaterally. See Nichols, 511 U.S. at 746, 114 S.Ct. 1921. Neither Moore nor Oyler addressed a violation of the right to counsel, and as noted by other courts "[q]uotations from cases, shorn of their factual context, are not much help in making a decision." United States v. Galindo-Gallegos, 244 F.3d 728, 730 (9th Cir. 2001).
Under a recidivism statute such as the one at issue in this case, the fact remains that the enhanced portion of the term of imprisonment would not have been imposed but for the previous conviction, and *1050 the uncounseled conviction should remain invalid for purposes of imposing imprisonment. See Baldasar, 446 U.S. at 227, 100 S.Ct. 1585 (Marshall, J., concurring). It has been recognized that courts
should not lose sight of the underlying rationale of Argersinger, that unless an accused has "the guiding hand of counsel at every step in the proceedings against him," his conviction is not sufficiently reliable to support the severe sanction of imprisonment. An uncounseled conviction does not become more reliable merely because the accused has been validly convicted of a subsequent offense.

Id. at 228-29, 100 S.Ct. 1585 (Marshall, J., concurring) (citations omitted) (emphasis supplied) (quoting Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932)).
There are no principled means of separating the enhanced term of imprisonment from the uncounseled misdemeanor convictions when addressing a recidivism statute of the type at issue in this case; the defendant's prior misdemeanor convictions are an element of the later felony offense, thus any enhanced imprisonment directly flows from the defendant's prior convictions. See, e.g., Finelli, 780 So.2d at 33 (holding that a defendant's prior misdemeanor DUI convictions are an element of his or her subsequent felony DUI offense). Therefore, "the adjudication of guilt corresponding to the [enhanced] prison sentence is [not] sufficiently reliable to permit incarceration." See Shelton, 535 U.S. at 667, 122 S.Ct. 1764 (emphasis supplied) (holding that uncounseled suspended sentences violate Argersinger and Scott). When faced with this reality, we cannot apply dicta from federal cases to artificially separate the uncounseled misdemeanor from the defendant's potentially much longer prison term because under a recidivism statute, the defendant is only serving the enhanced portion of his or her sentence because of an uncounseled "conviction [that] is not sufficiently reliable to support the severe sanction of imprisonment." Baldasar, 446 U.S. at 227, 100 S.Ct. 1585 (Marshall, J., concurring) (emphasis supplied). Therefore, we find Nichols unpersuasive in this context. We cannot agree with the rationale of the United States Supreme Court, which intimates that a repeat DUI offender is not receiving punishment for his or her prior uncounseled convictions. We come to this conclusion because proving those convictions beyond a reasonable doubtis part of the State's burden in seeking to convict the defendant for his or her later felony offense. See, e.g., Finelli, 780 So.2d at 33.
In sum, these prior uncounseled convictions are part of the defendant's later felony offense because they are elements of that offense. Therefore, in a situation such as this, we decline to endorse any holding which would conclude that the recidivist defendant is not receiving punishment for his or her prior uncounseled convictions. Consequently, we hold that Nichols is not persuasive precedent for purposes of interpreting article I, section 16 of the Florida Constitution. In addition, under article I, sections 2 and 16 of the Florida Constitution, the Florida Rules of Criminal Procedure, and the Florida Statutes, we reaffirm that this state is a prospective-imprisonment jurisdiction and that indigent defendants possess an independent state-law constitutional right to appointed counsel during criminal prosecutions.

iv. Our Revised Hlad/Beach Framework
In the preceding section, we recognized that uncounseled misdemeanor convictions are unreliable for purposes of imposing imprisonment and that such uncounseled convictions lead directly to increased terms of imprisonment when they constitute *1051 elements of a later felony offense. Therefore, we must next address whether our current Hlad/Beach framework reflects these tenets. We previously based our holdings in Hlad and Beach, in part, upon Justice Blackmun's Baldasar concurrence. Compare, Hlad, 585 So.2d at 930, with Baldasar, 446 U.S. at 229, 100 S.Ct. 1585 (Blackmun, J., concurring); see also Beach, 592 So.2d at 239-40. However, there are two problems associated with the current articulation of our Hlad/Beach framework.
First, the current framework injects a right-to-jury standard into right-to-counsel cases. Specifically, the framework requires that when the defendant was not imprisoned for a prior misdemeanor conviction in a direct proceeding, he or she may only mount a Hlad/Beach challenge to the later use of the misdemeanor as an enhancer if the misdemeanor was prospectively punishable by more than six months' imprisonment. This rule is derived from the United States Supreme Court's time-based right-to-jury standard. See Duncan v. Louisiana, 391 U.S. 145, 159, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) ("Crimes carrying possible penalties up to six months do not require a jury trial if they otherwise qualify as petty offenses[.]" (emphasis supplied)) The Supreme Court, however, has explicitly held that this time-based right-to-jury standard has no place in right-to-counsel cases. See Argersinger, 407 U.S. at 30-31, 92 S.Ct. 2006 ("We reject ... the premise that since prosecutions for crimes punishable by imprisonment for less than six months may be tried without a jury, they may also be tried without a lawyer.").
We agree with this position. The right to counsel is distinct from the right to a jury trial because each right emerged from a different common-law genealogy. See Argersinger, 407 U.S. at 29, 92 S.Ct. 2006. The English common law historically limited "the `deep commitment' to trial by jury to `serious criminal cases,'" i.e., those cases punishable by more than six months' imprisonment. Id. at 30, 92 S.Ct. 2006. Contrastingly, the common law recognized a right to counsel in "petty criminal cases," i.e., those cases where there is no possibility of imprisonment in excess of six months. Id. The Sixth Amendment later expanded the right to counsel to felony cases. See id. at 30-31, 92 S.Ct. 2006. Therefore, Duncan's right-to-jury standard should no longer play a role in our Hlad/Beach framework.
The second problem with our existing framework is that, in some circumstances, it permits the imposition of increased terms of imprisonment as a direct result of prior uncounseled misdemeanor convictions. This is currently permitted if those convictions did not originally lead to incarceration and were not prospectively punishable by more than six months' imprisonment. See Hlad, 585 So.2d at 929-30; Beach, 592 So.2d at 239-40. However, the unreliability of an uncounseled misdemeanor conviction does not turn on the length of the prospective term of imprisonment. Rather, it turns on the fact that even an uncounseled innocent gains little by contesting a "petty" misdemeanor where the prosecuting attorney is offering a low fine and community service in exchange for a guilty or no-contest plea. Cf. Nichols, 511 U.S. at 752, 114 S.Ct. 1921 (Souter, J., concurring in the judgment) (noting that the federal Sentencing Guidelinesunlike many recidivism statutes allow the defendant to "show ... that his prior conviction resulted from ... a frugal preference for a low fine with no counsel fee, or from a desire to put the matter behind him instead of investing the time to fight the charges").
If one cannot afford an attorney, and the prosecutor is offering no jail time, what real incentive is there to reject the plea *1052 bargain? That is the crux of the problem, and that is why the State may not, consistent with our state Constitution, impose deprivation of liberty as a penalty upon a defendant based on prior misdemeanor convictions, unless the defendant was either provided with counsel or validly waived that right. If the State would like to use prior misdemeanor convictions as enhancers, it should ensure that these misdemeanors are reliable enough to impose imprisonment by recommending that the trial court either appoint counsel or assist a willing indigent defendant in knowingly, intelligently, and voluntarily waiving the right to counsel.
We thus agree with courts from other jurisdictions which have held that the State may not use an uncounseled conviction to increase a defendant's loss of liberty in the absence of a valid waiver of counsel.[18] However, the loss of liberty is a penalty different in kind and severity from other penalties. We therefore hold that when the State prosecutes a repeat DUI offender, it may constitutionally seek applicable enhanced penalties and fines short of incarceration based upon prior uncounseled misdemeanor DUI offenses. Cf. Hrycak, 877 A.2d at 1216 (coming to a substantially similar conclusion). For example, on remand, if the State continues to prosecute this case, it may not use any of Mr. Kelly's prior misdemeanor DUI offenses to enhance his current offense unless it proves that Kelly was either represented by counsel or validly waived that right during those prior proceedings. In other words, any enhanced loss of liberty may only be based on the counseled offense(s) and the offense(s) for which Kelly validly waived his right to counsel. However, during any resulting DUI prosecution, the State may use each of Kelly's prior uncounseled misdemeanor DUI offenses to seek the enhanced penalties and fines short of incarceration that apply to a fourth DUI offense.[19] Here, these penalties *1053 and fines could include, inter alia, a fine between $1,000 and $5,000; probation, including the completion of a substance-abuse course and a psychosocial evaluation; the impoundment and immobilization of all vehicles that Mr. Kelly owns for 90 days; and the permanent revocation of Kelly's driver's license or driving privilege. See §§ 316.193(2)(b)(3), 775.083(1)(c), 316.193(5), 316.193(6)(c), 322.28(2)(e), Fla. Stat. (2003).

III. CONCLUSION
Consistent with the views we have expressed in this opinion, we answer the rephrased certified question as follows: Article I, section 16 of the Florida Constitution, as influenced by Florida's prospective-imprisonment standard, prevents the State from using uncounseled misdemeanor convictions to increase or enhance a defendant's later misdemeanor to a felony, unless the defendant validly waived his or her right to counsel with regard to those prior convictions. However, the State may constitutionally seek the increased penalties and fines short of incarceration associated with the defendant's relevant number of DUI offenses. In accordance with this holding, we adapt our Hlad/Beach framework along the following lines. To meet the initial burden of production, the defendant must assert under oath, through a properly executed affidavit that:
(1) the offense involved was punishable by imprisonment;[20]
(2) the defendant was indigent and, thus, entitled to court-appointed counsel;
(3) counsel was not appointed; and
(4) the right to counsel was not waived.
If the defendant sets forth these facts under oath, then a burden of persuasion shifts to the State to show either that counsel was provided or that the right to counsel was validly waived. Cf. Beach, 592 So.2d at 239.[21]
For these reasons, we approve the decision of the Fourth District Court of Appeal, but disapprove any of its reasoning that is inconsistent with our modified framework. Accordingly, we remand to *1054 the Fourth District for further proceedings consistent with this opinion.
It is so ordered.
QUINCE, C.J., and ANSTEAD and PARIENTE, JJ., concur.
WELLS, J., dissents.
CANADY and POLSTON, JJ., did not participate.
WELLS, J., dissenting.
Recently, in my dissent in State v. Powell, 998 So.2d 531 (Fla. 2008), I noted the following in respect to the majority suppressing a confession based upon the majority's construction of a Miranda[22] form widely used by law enforcement:
Additionally, it will result in reversing the convictions of individuals who have confessed to crimes based upon a holding that is at most an extreme technical adherence to language and that has no connection with whether the person who confessed understood his or her rights.
Again in this case, the majority begins with a very technical constitutional construction of language in a plea form containing an express waiver of the right to counsel that was used in Broward County for at least ten years without being held to be constitutionally infirm. The majority then does not accept the uncontroverted record that a knowing waiver of counsel was executed in both of the questioned prior driving under the influence (DUI) pleas. Recognizing that the United States Supreme Court's latest decision on point was directly contrary to its decision in this case, the majority discards this Court's long adherence to United States Supreme Court decisions as to the constitutional rights involved and reaches its conclusion by a new reliance on the Florida Constitution. The result of the majority's complex analysis is that the State cannot prosecute this defendant for his fourth DUI, despite the fact that in each of the prior three cases, the defendant pled to DUI, testified that he knew he had a right to counsel, and knowingly waived that right while pleading to the three prior DUI charges. This result is not in accord with the legislative scheme for removing repeat DUI offenders from Florida roads. Predictably, and in my view unfortunately, since the majority does not determine whether its decision is to be applied retroactively, many other final convictions of repeat DUI offenders will be subject to further postconviction litigation to determine whether those DUI convictions must be reversed because of the majority's new construction of the Florida Constitution.
My analysis in this case starts with the fundamental fact that Kelly was not prejudiced by what was at most a questionable, technical defect in the long-used plea forms in which he acknowledged that he knew he had the right to counsel, waived that right, and pled to the DUI charges. First, it is necessary to understand just how technical and nonprejudicial the defect upon which the majority premises its decision is. The three plea forms executed by Kelly in pleading no contest to the DUI charges on October 27, 1987, on March 2, 1995, and on September 18, 1997, contained the same affirmative statement that Kelly understood that he had "the right to an attorney and the right to have an attorney appointed if [he] cannot afford one and if the Judge is considering a jail sentence on this charge." The form contained an express acknowledgement by Kelly that he wished to waive that right. Until this case, no case that I have found or that has been cited has held or even called into question whether this form was a valid waiver of counsel. We know that the form was used for at least ten years since Kelly *1055 executed the form three times in ten years.
The technical defect that the present majority finds in the form is that the form states "if the judge is considering jail sentence on this charge." The majority holds as to the plea forms:
Florida is a "prospective-imprisonment" jurisdiction that provides indigent criminal defendants a right to counsel in all criminal prosecutions "punishable by imprisonment," except in misdemeanor or ordinance-violation cases where the trial judge affirmatively certifies in writing before trialthat the defendant will not face a term of imprisonment for the charged offense. See Fla. R.Crim. P. 3.111(b)(1) (1992). In other words, in Florida, indigent defendants have a right to counsel in all criminal prosecutions punishable by imprisonmenteven misdemeanor prosecutionsunless the trial judge "opts out" by providing the defendant a written, pretrial certification that the defendant will not be imprisoned for the charged offense. See id.; see also Fla. R.Crim. P. 3.160 (advising indigents of the right to appointed counsel); § 27.51, Fla. Stat. (2003) (mandating that the public defender represent indigents charged with violations of Chapter 316 of the Florida Statutes; DUI is a Chapter 316 offense punishable by imprisonment).
This is not the legal landscape Mr. Kelly's State-prepared plea forms described. Rather, they provided the misleading impression that an indigent criminal defendant lacks a right to counsel so long as the trial judge is not currently considering jail time as an appropriate sentence. This mischaracterization relieved the trial judges of their duty to make the affirmative, written, pretrial certification that the rule then required, and still requires today in a slightly modified form. See Fla. R.Crim. P. 3.111(b)(1) ("In the discretion of the court, counsel does not have to be provided to an indigent person in a prosecution for a misdemeanor or violation of a municipal ordinance if the judge, at least 15 days prior to trial, files in the cause a written order of no incarceration certifying that the defendant will not be incarcerated...." (emphasis supplied) (the current version of this rule permits the defendant or defense counsel to waive the fifteen-day requirement)). Consequently, even if Mr. Kelly read and understood these plea forms, he would not have been properly informed of his right to counsel.
Majority op. at 1035-36. To boil this down, the defect which results in the majority holding that the waivers of the right to counsel were invalid was that prior to the plea agreement being signed, the trial judge had not issued a written order stating that Kelly would not be sentenced to jail time. The majority finds this to be a defect sufficient to invalidate the waivers of counsel even though the waiver of counsel was included in a plea which was entered upon the agreement that Kelly would receive no jail time and that immediately upon the execution of the pleas, Kelly was sentenced to no jail time.
I do not conclude that the majority's technical holding is a fair construction of the plea form. The plea form advised Kelly that he had a right to counsel "if the judge is considering jail time." Thus, a reasonable understanding of what occurred at the time of both the 1995 plea and the 1997 plea was that Kelly was advised that if the judge was considering jail time, he was entitled to counsel. Plainly, for the waiver of counsel to be effective, this meant that the trial judge would not and could not sentence Kelly to jail time. Here, it is undeniable that the trial judge was not considering jail time. The proof of this, of course, is in the pudding, as the saying goes, since Kelly *1056 was sentenced at the same time that he executed the pleas, and he was not sentenced to jail time.
From reading Kelly's testimony at the evidentiary hearing in the present case, in which Kelly was represented by counsel, it is clear that Kelly knew he had a right to counsel at the time of both the 1995 and the 1997 pleas and that he knowingly waived counsel so that he could take advantage of the deals he had been offered in exchange for his no contest pleas. Specifically, the transcript indicates:[23]
Q. ... But, you wanted to plea the case out on the date that was alleged, March 2nd, 1995?
A. I thought it was the easiest way to resolve my problem, mainly easiest financial situation for me.
....
Q. Mr. Kelly, do you recognize the signature that's on the plea form in this case?
A. Yes, that's my signature.
Q. Okay. So did you review this plea form at the time you pled the case out that's dated March 2nd, 1995?
A. Yes, I did.
Q. And that plea form also informed you at paragraph number 4 of a right to an attorney?
....
[Prosecutor read from the plea form.] Judge, I will have a right to an attorney and right to have an attorney appointed if I cannot afford one and if the Judge is considering a sentence of considering a jail sentence on this charge. And it says, previous to that I have sworn under oath to the Judge, I have sworn under oath before the judge that I understand the following and includes the paragraph 4.
Q. So Mr. Kelly, before you signed this document you read this plea form?
A. Yes I did.
Q. And you understood all those rights?
A. To the best that I understand, yes II'm no attorney.
Q. Okay. But again, you were pleaing the case out on that date, you knew you had a right to an attorney and in exchange you preferred to waive the right to an attorney in order to go forward with the plea on the day of arraignment?
A. Yeah.
Thereafter, Kelly was asked the following in regard to his 1997 plea:
Q. Now, with regard to the 1997, 21062 NM10A case, do you recall pleaing out the DUI case in September of 1997?
A. Yes.
Q. And do you have an independent recollection of that plea?
A. I don't know. Independent, meaning very vivid memory of it?
Q. Yeah.
A. I know that I, that I followed suit with the way that I did prior, that I didn't try to obtain an attorney or try to get the Court to appoint one for me.
Q. Well, let me ask you this
A. I know that I read the rights form and signed it and took the plea offer.
....
Q. Now, Mr. Kelly, when you pled the case out you had the understanding *1057 that you had the right to an attorney at the time of the plea?
A. I understood that I knew that I couldn't afford an attorney.
Q. Okay.
A. I understood that the Court's [sic] could possibly try to help me with a Public Defender.
Q. Okay. But rather than obtaining the services of [the] Public Defender you felt that the plea was in your best interest[[24]] and you went forward without an attorney?
A. Yes.
The record simply does not support the majority opinion's summary of relevant facts. See Majority op. at 1034. Also, after reading the transcript, I do not find support for the following statement in the majority's opinion:
[T]he circuit court, apparently sub silento, rejected the State's argument that Mr. Kelly had validly waived his right to counsel when he pled no contest to his 1995 and 1997 misdemeanor DUI charges.
Majority op. at 1034 (footnote omitted). The trial court did not deal at all with this issue in its order. All the trial court's order said was: "ORDERED AND ADJUDGED that the Defendant's Motion to Dismiss is Granted." During the oral hearing, the trial court made no statement as to how or why he was going to rule. Therefore, there is no way to know on what basis the trial judge would have found the waiver not to be valid. Moreover, the record evidence which I have set out above does not support such a determination.
Next, it is my view that the majority misapplies State v. Beach, 592 So.2d 237 (Fla.1992). From the record, I note that the trial judge did not deal with Beach at all. But, on the essential Beach issue of whether Kelly waived his right to counsel in exchange for the pleas, the trial record is uncontroverted that Kelly did so. I again refer to the transcript testimony that I set out above. Therefore, under Beach, the prior convictions could be used.
Though I conclude that there was a valid waiver and that should end consideration of the issues in this case, I recognize that the district court's certified question poses the question as to whether "an uncounseled prior misdemeanor conviction, in which the defendant could have been incarcerated for more than six months, but was not incarcerated for any period, [can] be used to enhance a current charge from a misdemeanor to a felony?" State v. Kelly, 946 So.2d 1152, 1154 (Fla. 4th DCA 2006). This question raises the issue as to whether we will continue to apply our decision in Hlad v. State, 585 So.2d 928 (Fla. 1991), in view of the fact that the underpinnings of Hlad, namely the United States Supreme Court's decision in Baldasar v. Illinois, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), has been taken away by the United States Supreme Court's later decision in Nichols v. United States, 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994).
The majority rephrases the question and then adopts the dissent in Hlad and finds a constitutional violation on the basis of state law that is contrary to this Court's majority holding in Hlad as well as being contrary to the United States Supreme Court's decision in Nichols. In rejecting Hlad in favor of the Hlad dissent's view, *1058 the majority casts aside this Court's often and recently stated commitment to stare decisis. See Strand v. Escambia County, 992 So.2d 150 (Fla.2008); N. Fla. Women's Health & Counseling Servs., Inc. v. State, 866 So.2d 612, 637 (Fla.2003).
Until today, this Court had always followed the United States Supreme Court's interpretation when addressing right to counsel issues. See, e.g., Cash v. Culver, 120 So.2d 590, 594 (Fla.1960) (following Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)); Gideon v. Wainwright, 153 So.2d 299, 300 (Fla.1963) (following Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), on remand); Rollins v. State, 299 So.2d 586, 588 (Fla.1974) (following Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972)); Goode v. State, 365 So.2d 381, 383 (Fla.1978) (following Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)); Hill v. State, 688 So.2d 901, 904 (Fla.1996) (same); Hlad, 585 So.2d at 929-30 (following Baldasar, 446 U.S. 222, 100 S.Ct. 1585); Beach, 592 So.2d at 239 (same); see also Patterson v. State, 938 So.2d 625, 628-29 (Fla. 2d DCA 2006) (recognizing that in Beach and Hlad, this Court followed United States Supreme Court precedent).
The majority asserts that I have incorrectly overlooked the true content of Traylor v. State, 596 So.2d 957 (Fla.1992), including its state-law posture. Of course, I do recognize our Traylor opinion, but unlike the majority, I have not overlooked what we later clarified about the Traylor opinion in State v. Owen, 696 So.2d 715, 719 (Fla.1997):
Though our analysis in Traylor was grounded in the Florida Constitution, our conclusions were no different than those set forth in prior holdings of the United States Supreme Court.
This is precisely the point that I now make. It is perplexing how the majority can state that Owen did not involve a right-to-counsel claim when the very issue confronted by this Court was whether the principles concerning requests for counsel, as discussed in Davis and Traylor, applied in equal force to requests to terminate an interrogationa question we answered in the affirmative.
Indeed, in Hlad, we adopted what we discerned to be the federal standard articulated in Baldasar. Baldasar held that a previous misdemeanor conviction could not be used to enhance a current charge to a felony if the defendant (1) was actually imprisoned or (2) could have been imprisoned for more than six months as a result of the uncounseled conviction. Hlad, 585 So.2d at 930. Three years after we decided Hlad, Baldasar was no longer good law. Recognizing that its splintered decision in Baldasar had caused a high degree of confusion, the United States Supreme Court receded from Baldasar in Nichols and clarified that the Sixth Amendment only precludes enhancement if the defendant was actually imprisoned. Nichols, 511 U.S. at 746-47, 114 S.Ct. 1921.
Though the majority refers extensively to Justice Souter's concurring opinion in Nichols, a concurring opinion no other justices joined, the present majority rejects the United State Supreme Court's majority opinion in Nichols. My view is that the Nichols majority stated important reasons for its decision.
Five Members of the Court in Baldasarthe four dissenters and Justice Stewartexpressed continued adherence to Scott v. Illinois, 440 U.S. 367[, 99 S.Ct. 1158, 59 L.Ed.2d 383] (1979). There the defendant was convicted of shoplifting under a criminal statute which provided that the penalty for the offense should be a fine of not more than $500, a term of not more than one year in jail, or both. The defendant was in *1059 fact fined $50, but he contended that since imprisonment for the offense was authorized by statute, the Sixth and Fourteenth Amendments to the United States Constitution required Illinois to provide trial counsel. We rejected that contention, holding that so long as no imprisonment was actually imposed, the Sixth Amendment right to counsel did not obtain. Id. at 373-374[, 99 S.Ct. 1158]. We reasoned that the Court, in a number of decisions, had already expanded the language of the Sixth Amendment well beyond its obvious meaning, and that the line should be drawn between criminal proceedings that resulted in imprisonment, and those that did not. Id. at 372[, 99 S.Ct. 1158].
We adhere to that holding today, but agree with the dissent in Baldasar that a logical consequence of the holding is that an uncounseled conviction valid under Scott may be relied upon to enhance the sentence for a subsequent offense, even though that sentence entails imprisonment. Enhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes that are commonplace in state criminal laws, do not change the penalty imposed for the earlier conviction. As pointed out in the dissenting opinion in Baldasar, "[t]his Court consistently has sustained repeat-offender laws as penalizing only the last offense committed by the defendant. E.g., Moore v. Missouri, 159 U.S. 673, 677[, 16 S.Ct. 179, 40 L.Ed. 301] (1895); Oyler v. Boles, 368 U.S. 448, 451[, 82 S.Ct. 501, 7 L.Ed.2d 446] (1962)." 446 U.S. at 232, 100 S.Ct. 1585.
Nichols, 511 U.S. at 746-47, 114 S.Ct. 1921.[25] This Court should follow the United States Supreme Court as it has on this issue until today.
We should follow the law as determined in Nichols and find no constitutional prohibition against the State enhancing Kelly's charge with his misdemeanor offense because no incarceration was imposed. As the Fourth District implicitly recognized in certifying the question, the rule of law dictates that we recede from Hlad and Beach, both of which relied on the now-discarded Supreme Court decision in Baldasar. Accordingly, we should answer the certified question in the affirmative and hold that an uncounseled prior misdemeanor conviction in which the defendant could have been incarcerated for more than six months but was not incarcerated for any period can be used to enhance a current charge from a misdemeanor to a felony.
The majority relies upon Florida Rule of Criminal Procedure 3.111(b) and section 27.51, Florida Statutes (2003). Ironically, these two sources were adopted in order to implement the Sixth Amendment as interpreted by the United States Supreme Court prior to Nichols. Neither the rule nor the statute was adopted based on the Counsel Clause of article I, section 16.
Rule 3.111(b) requires the appointment of counsel to indigent persons in all prosecutions for offenses punishable by incarceration. But, as this Court itself explained, rule 3.111(b) was adopted to comply with the Supreme Court's decision in Argersinger:
On June 12, 1972, the Supreme Court of the United States extended the right to counsel requirement embodied in the Sixth Amendment to all cases which result in a loss of liberty. Argersinger v. Hamlin. The Court extended the logic of Powell v. Alabama, and Gideon v. Wainwright, both involving felony convictions, saying: "their rationale has relevance to any criminal trial, where an accused is deprived of his liberty." A *1060 guilty plea resulting in a jail sentence is also invalid absent counsel. Any trial, whether on a felony or misdemeanor charge, requires counsel if it may end up "in the actual deprivation of a person's liberty."

We have provided a method of insuring that this requirement is satisfied in our new rules of criminal procedure, which became effective February 1, 1973, through Rule 3.111(b)(1)....
Rollins, 299 So.2d at 588 (some emphasis added) (footnotes omitted). Thus, the adoption of rule 3.111 was not based upon article 1, section 16.
Second, chapter 27, which created the Public Defender's Office, was in response to the United States Supreme Court's decisions interpreting the scope of the Sixth Amendment right to counsel, particularly Gideon. "The purpose of chapter 27, part II, Florida Statutes (concerning public defenders), is to ensure that indigent defendants are afforded the opportunity for representation by counsel as commanded by Gideon v. Wainwright." Behr v. Gardner, 442 So.2d 980, 981-82 (Fla. 1st DCA 1983) (on motion for rehearing); see also State ex rel. Smith v. Brummer, 443 So.2d 957, 959 (Fla.1984). More particularly, the provisions of section 27.51, requiring the public defender to represent defendants charged with misdemeanors, were enacted in response to Argersinger. Because the Supreme Court's decision in Argersinger interpreting the Sixth Amendment precipitated the adoption of rule 3.111 and section 27.51, not article I, section 16, the majority's reliance on these provisions as the basis to find a broader right to counsel in Florida's Constitution is misplaced.
After Florida adopted rule 3.111 and section 27.51 to provide for counsel in cases of prospective imprisonment following Argersinger, the United States Supreme Court subsequently restricted the right to appointed counsel to cases where the defendant was actually imprisoned. Scott v. Illinois, 440 U.S. 367, 373-74, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). However, because Florida never codified the Scott decision in its rules or statutes, the prospective imprisonment standard from Argersinger remains despite the delimitation of its source.
Finally, what should be corrected is the procedure that this Court created in Beach. In Beach, this Court allowed a collateral attack in the subsequent DUI case of the validity of the convictions in prior DUI cases. This is contrary to our procedures in other criminal cases in which we require the collateral attack on a conviction to be filed in the case in which the conviction was entered. The motion in other cases is required to be brought pursuant to Florida Rule of Criminal Procedure 3.850. If the defendant wishes to withdraw the plea, the motion must be in accord with Florida Rule of Criminal Procedure 3.170. This provides an orderly process and prevents what happened in the instant case, in which the defendant did not attack the prior convictions until many years after the convictions when there is no transcript of what occurred. The Beach decision is out of sync with this Court's longstanding commitment to finality.
In conclusion, based upon the record in this case, it is clear that Kelly knew he had a right to counsel at the time of both his 1995 and 1997 pleas and that he knowingly waived counsel so that he could take advantage of the deals that he had been offered in exchange for his no contest pleas. Therefore, under Beach, the prior convictions could be used to enhance his subsequent DUI charge. In addition, continuing to follow United States Supreme Court precedent on this issue, my answer to the district court's certified question would be that an uncounseled prior misdemeanor *1061 conviction in which the defendant could have been incarcerated for more than six months but was not incarcerated for any period can be used to enhance a current charge from a misdemeanor to a felony.
NOTES
[1] Based on article I, sections 2 and 16 of the Florida Constitution, this Court has already held that indigent defendants possess an independent state-law constitutional right to appointed counsel during criminal prosecutions. See Traylor v. State, 596 So.2d 957, 969-70 (Fla.1992).
[2] When "uncounseled" is used in this context, the term "refers to an indigent defendant who was not provided a lawyer." Hlad, 585 So.2d at 929 n. 1.
[3] Kelly's October 27, 1987, misdemeanor DUI no-contest plea was also uncounseled, but was not punishable by more than six months' imprisonment. Kelly served probation, completed community service hours, and paid fines as a result of this 1987 conviction.
[4] The Fourth District analyzed the situation as follows: "This issue was contested at the evidentiary hearing on the motion to dismiss, at which Kelly testified, and the court, although not expressly saying so, obviously resolved the waiver issue against the state." State v. Kelly, 946 So.2d 1152, 1154 n. 1 (Fla. 4th DCA 2006) (emphasis supplied). The dissent overlooks both this explanation from the Fourth District and the fact that the State presented a waiver argument in the circuit court. As part of this process, the circuit court had the opportunity to directly judge the credibility of Mr. Kelly. In response, the circuit court granted Kelly's motion to dismiss based upon Hlad and Beach. Both lower courts thus heard and, without further exposition, rejected the State's waiver argument. Cf. Black's Law Dictionary 1469 (8th ed.2004) ("sub silentio. Under silence; without notice being taken; without being expressly mentioned." (emphasis supplied)).
[5] "Considering" is a present participle, which is generally defined as "taking into account." Merriam Webster's Collegiate Dictionary 246 (10th ed.1996). As we further explain below, whether a trial judge is currently "considering" jail time is not the legal standard in Florida with regard to determining whether a criminal defendant charged with a misdemeanor is entitled to the representation of appointed counsel. Rather, in such contexts, to obviate the need for appointing counsel to represent an indigent defendant, trial judges have the affirmative duty to provide the defendant a written, pretrial certification that the defendant will not be imprisoned for the charged offense. See Fla. R.Crim. P. 3.111(b)(1); Case v. State, 865 So.2d 557, 558 (Fla. 1st DCA 2003).
[6] The dissent contends that "[t]he record simply does not support [our] summary of the relevant facts." Dissenting op. at 1057. However, the extended evidentiary-hearing quotations presented by our colleague in dissent merely reaffirm that, in response to the State's leading questions, Mr. Kelly explained that he understood he could not afford to retain a private attorney to represent him, and that he viewed appointed representation as a mere possibility, rather than an affirmative constitutional right because, as he stated, he was "no attorney." Further, the record reveals the telling absence of any documents demonstrating that Kelly received proper plea colloquies. These are some of the very defects that the presence of appointed counsel would have remedied. In this context, we are dealing with often uneducated, indigent lay persons who frequently do not understand if, or when, they are entitled to appointed representation. All told, the dissent and the State offer the same faulty conclusions in this regard, which we definitively reject in our analysis below.
[7] In light of the dissent, it is important to thoroughly explain that a DUI defendant's prior misdemeanors are elements of the current, enhanced felony offense, which the State must PROVE beyond a reasonable doubt. This indisputable legal proposition supplies the rationale that explains and justifies why instances of Hlad error are not addressed through postconviction motions and are, instead, subject to our Beach framework. As in any criminal case, the defendant possesses the right and ability to contest elements of the charged offense. Further, uncounseled misdemeanorsfor which no imprisonment is, or was, imposedare VALID convictions; however, they remain INVALID for purposes of depriving the defendant of his or her liberty. Therefore, when the State files an information charging felony DUI (which is inherently based on a defendant's prior misdemeanor convictions), and the defendant knows that he or she did not validly waive the right to counsel in those prior cases, the defendant may then directly contest that element of the current felony offense in the instant felony prosecution.

By force of logic, we decline to adopt the perspective of the dissent, which would ignore the basic fact that prior misdemeanor convictions constitute elements of a later felony DUI offense. It is also important to highlight for our colleague that Nichols did not involve or address this type of recidivism statute.
[8] As we explained in Traylor:

Special vigilance is required where the fundamental rights of Florida citizens suspected of wrongdoing are concerned, for here society has a strong natural inclination to relinquish incrementally the hard-won and stoutly defended freedoms enumerated in our Declaration [of Rights] in its effort to preserve public order. Each law-abiding member of society is inclined to strike out at crime reflexively by constricting the constitutional rights of all citizens in order to limit those of the suspecteach is inclined to give up a degree of his or her own protection from government intrusion in order to permit greater intrusion into the life of the suspect. The framers of our Constitution, however, deliberately rejected the short-term solution in favor of a fairer, more structured system of criminal justice....
596 So.2d at 963.
[9] The dissent relies upon State v. Owen, 696 So.2d 715 (Fla. 1997), for the proposition that our conclusions in Traylor "were no different than those set forth in prior holdings of the United States Supreme Court." Dissent at 10 (quoting Owen, 696 So.2d at 719). However, our colleague again overlooks a significant point: Owen did not involve a right-to-counsel issue under either the federal Sixth Amendment or article I, section 16 of the Florida Constitution (rights which apply during criminal prosecutions); rather, Owen solely and exclusively addressed Miranda-based rights derived from the federal Fifth Amendment and article I, section 9 of the Florida Constitution that apply during custodial interrogation. These are distinct rights governed by equally distinct doctrine, which the dissent regrettably confuses and conflates. See, e.g., Rhode Island v. Innis, 446 U.S. 291, 300 n. 4, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (observing that "the policies underlying the two constitutional protections are quite distinct" (emphasis supplied)); see also Davis v. United States, 512 U.S. 452, 456-57, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (highlighting differences between these protections and explicitly clarifying that Davis involved the Miranda-based right to counsel, not the constitutional right to counsel under the Sixth Amendment). Moreover, in Owen, it is clear that we never purported to address any portion of Traylor with regard to the right to counsel under article I, section 16 of the Florida Constitution (Traylor offered separate analyses and holdings with regard to the right against self-incrimination under article I, section 9 of the Florida Constitution and the right to counsel under article I, section 16 of that same foundational document). Compare Traylor, 596 So.2d at 964-66 (addressing article I, section 9), with id. at 966-70 (addressing article I, sections 2 and 16). A simple textual search of Owen demonstrates that we never addressed, let alone mentioned, "article I, section 16" or the "Sixth Amendment." Rather, Owen dealt exclusively with the issue of equivocal invocations of the right to cut off questioning during custodial interrogation (i.e., an issue with regard to the right against self-incrimination). Thus, in Owen, we addressed an issue involving article I, section 9 of the Florida Constitution (i.e., a Miranda issue), not article I, section 16. Furthermore, we nevertheless clarified in Owen that Traylor "remind[s] us that we have the authority to [independently interpret the right against self-incrimination under the Florida Constitution] regardless of federal law"; we simply chose not to do so in that decision. Owen, 696 So.2d at 719 (emphasis supplied).
[10] See, e.g., Dameron v. Brodhead, 345 U.S. 322, 326, 73 S.Ct. 721, 97 L.Ed. 1041 (1953); see also Black's Law Dictionary 644 (8th ed.2004) ("cooperative federalism. Distribution of power between the federal government and the states in which each recognizes the powers of the other while jointly engaging in certain governmental functions.").
[11] "The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him." Gideon v. Wainwright, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (emphasis supplied).
[12] Justices Stewart and Marshall wrote separate concurrences in Baldasar because Justice Stewart endorsed Scott's actual-imprisonment standard, while Justice Marshall continued to express disagreement with Scott, but accepted it as valid for purposes of writing his Baldasar concurrence. Thus, Justices Stewart and Marshall expressed very similar ideas, but Justice Marshall only accepted Scott's validity for the sake of argument. Justices Brennan and Stevens joined both Stewart and Marshall's concurrences. Consequently, a four-justice block existed, which agreed with the central premise that a conviction that is invalid for purposes of imposing imprisonment may not later be used collaterally to increase a defendant's term of imprisonment for a subsequent offense. Compare Baldasar, 446 U.S. at 224, 100 S.Ct. 1585 (Stewart, J., concurring, joined by Brennan and Stevens, JJ.), with id. at 225-29, 100 S.Ct. 1585 (Marshall, J., concurring, joined by Brennan and Stevens, JJ.).
[13] The issue, as framed by the Court, presumed the validity of Scott's actual-imprisonment standard. See Baldasar, 446 U.S. at 222, 100 S.Ct. 1585 ("[W]hether [an uncounseled misdemeanor] conviction may be used under an enhanced penalty statute to convert a subsequent misdemeanor into a felony with a prison term" without violating the rule in Scott.). Justice Blackmun, however, dissented in Scott and expressed the same views in Baldasar. See id. at 229-30, 100 S.Ct. 1585 (Blackmun, J., concurring); Scott, 440 U.S. at 389-90, 99 S.Ct. 1158 (Blackmun, J., dissenting).
[14] Such an approach would also be constitutionally required with regard to Florida's Criminal Punishment Code. Cf. Fla. R.Crim. P. 3.704(d)(27) (authorizing the trial judge to depart downward for permissible reasons when memorialized in a contemporaneous writing, and referring to a non-exhaustive justification list appearing in section 921.0026(2), Florida Statutes). The inquiry remains whether the adjudications of guilt corresponding to the prior uncounseled convictions are sufficiently reliable to permit enhanced incarceration.
[15] See also Ralph Ruebner et al., Shaking the Foundations of Gideon: A Critique of Nichols in Overruling Baldasar v. Illinois, 25 Hofstra L.Rev. 507, 550-51 (1996) (explaining how Nichols is inconsistent with prior United States Supreme Court right-to-counsel precedent).
[16] Baldasar, 446 U.S. at 232, 100 S.Ct. 1585 (Powell, J., dissenting) (emphasis supplied) (citing Moore v. Missouri, 159 U.S. 673, 677, 16 S.Ct. 179, 40 L.Ed. 301 (1895) (double jeopardy case-did not involve the right to counsel); Oyler v. Boles, 368 U.S. 448, 451, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962) (equal protection and due process casedid not involve the right to counsel)); see also Nichols, 511 U.S. at 747, 114 S.Ct. 1921.
[17] See, e.g., Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (the "Blockburger test" asks whether an offense contains an element not contained in the other relevant offense, to determine whether a double-jeopardy violation has occurred).
[18] See, e.g., State v. Hrycak, 184 N.J. 351, 877 A.2d 1209, 1216 (2005) ("We are convinced that a prior uncounseled DWI conviction of an indigent is not sufficiently reliable to permit increased jail sanctions under the enhancement statute." (emphasis supplied)); State v. Sinagoga, 81 Hawai`i 421, 918 P.2d 228, 241, 252 (Ct.App.1996) ("[T]he rationale for not allowing the consideration of an uncounseled criminal conviction as a basis for the imposition or enhancement of a prison sentence is its lack of reliability." (emphasis supplied)), overruled on other grounds, State v. Veikoso, 102 Hawai`i 219, 74 P.3d 575, 583 n. 8 (2003); State v. Deville, 879 So.2d 689, 690-91 (La.2004); State v. Anderson, 185 Ariz. 454, 916 P.2d 1170, 1171-72 (Ct.App.1996).
[19] The dissent's statement that "[t]he result of the majority's complex analysis is that the State cannot prosecute this defendant for his fourth DUI [offense] ... [, and] [t]his result is not in accord with the legislative scheme for removing repeat DUI offenders from Florida roads," is doubly mistaken. Dissenting op. at 1054. First, as stated above, the State is free to prosecute Kelly, and similarly situated repeat DUI offenders, for their subsequent DUI offenses; it simply cannot use prior uncounseled misdemeanor convictions to increase the current offense's length of incarceration. Second, there is nothing preventing the State from permanently removing Kelly, and similarly situated repeat DUI offenders, from Florida's roads by permanently revoking their driver's licenses. In relevant part, section 322.28(2)(e), Florida Statutes (2003), provides:

The court shall permanently revoke the driver's license or driving privilege of a person who has been convicted four times for violation of s. 316.193 or former s. 316.1931 or a combination of such sections. The court shall permanently revoke the driver's license or driving privilege of any person who has been convicted of DUI manslaughter in violation of s. 316.193. If the court has not permanently revoked such driver's license or driving privilege within 30 days after imposing sentence, the department shall permanently revoke the driver's license or driving privilege pursuant to this paragraph. No driver's license or driving privilege may be issued or granted to any such person.
(Emphasis supplied.); see also State v. Walters, 567 So.2d 49, 50 (Fla. 2d DCA 1990) ("[R]evocation is an administrative remedy for the purpose of protecting the public and. . . the judge has no judicial discretion. Therefore, the uncounseled nature of the prior conviction can have no bearing on the court's duty to permanently revoke [the repeat DUI offender's] driving privileges." (citation omitted)).
[20] If during the underlying misdemeanor proceedings, the trial judge(s) avoided the need for appointing counsel by certifying pursuant to Florida Rule of Criminal Procedure 3.111(b)(1) that the defendant would not be imprisoned as a result of the misdemeanor conviction(s), this certification would necessarily extend to the State's later attempt to use these misdemeanors as statutory enhancers. Cf. Case, 865 So.2d at 558 ("A defendant who is charged with a misdemeanor punishable by possible imprisonment is entitled to counsel unless the judge timely issues a written order guaranteeing that the defendant will never be incarcerated as a result of the conviction." (emphasis supplied)).
[21] The first prong of the Hlad/Beach framework formerly read: "(1) that the offense involved was punishable by more than six months of imprisonment or that the defendant was actually subjected to a term of imprisonment[.]" Id. This prior version is incompatible with (i) Florida's prospective-imprisonment scheme, and (ii) our recognition that any felony-DUI imprisonment imposed upon the defendantusing uncounseled misdemeanor DUIsresults directly from those uncounseled convictions. This is the case because those prior uncounseled convictions constitute an element of the defendant's subsequent felony DUI. See, e.g., Finelli, 780 So.2d at 33 (defendant's prior misdemeanor DUI convictions are an element of felony DUI); § 316.193, Fla. Stat. (2003).
[22] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[23] The majority seems to imply that because the prosecutor was asking Kelly the questions, these clear answers should not be given their due weight. I assume that if the questions were objectionable, Kelly's counsel would have objected. There is no indication that Kelly was "uneducated" and did not understand these questions or his right to counsel.
[24] Kelly obviously had a reasonable basis to conclude that the pleas with no jail time were in his best interest since, in the 1995 arrest, his blood alcohol level was 0.152 on the first test and 0.161 on the second test, and in the 1997 arrest, his blood-alcohol level was 0.179 on the first test and 0.182 on the second test. Section 316.193, Florida Statutes, sets the maximum limit at 0.08, so both times Kelly was over twice the legal limit.
[25] I accept this analysis in answer to the majority's footnote 7.