PER CURIAM.
 

 Appellant was convicted of first-degree felony murder and armed burglary of a dwelling. His sole argument on appeal is that the trial court erred when it denied his motion to suppress statements taken in violation of his right to counsel under the Sixth Amendment of the United States Constitution, and article I, section 16 of the Florida Constitution. We affirm.
 

 Appellant and two co-defendants broke into a Brevard County home to commit a theft. The homeowner was home at the time of the break-in and was fatally shot. After being indicted on first-degree felony murder and armed burglary of a dwelling charges, Appellant fled the state and was eventually arrested on unrelated charges in New York. Law enforcement officers in New York contacted the Brevard County Sheriffs Office, which began the extradition process. The New York court appointed counsel to represent Appellant on the New York charges, as well as in the extradition proceedings.
 

 Two officers from the Brevard County Sheriffs Office went to the Riker’s Island jail in New York to interview Appellant about the murder and burglary. The officers did not notify Appellant’s New York counsel, and counsel was not present during the interview. Before speaking with Appellant, however, the officers read Appellant his Miranda
 
 [1]
 
 rights. Appellant waived his rights and gave a recorded statement.
 

 Appellant later moved to suppress his statement, arguing that it was obtained in violation of his right to counsel under the Sixth Amendment and article I, section 16 of the Florida Constitution. He claimed that because his right to counsel had attached and been invoked, his waiver during the police-initiated interview was invalid because his counsel was not present. The trial court denied the motion, concluding that simply accepting counsel’s representation for the extradition proceedings did not equate to an invocation of the right to counsel on the underlying criminal charges. Finding that he voluntarily and knowingly waived the right to counsel, the court allowed the prosecution to introduce the statement at trial. Appellant was subsequently convicted of both charges and sentenced to life imprisonment on each charge. On review, Appellant urges this Court to reject the trial court’s ruling, and instead hold that a defendant invokes his right to counsel on the underlying criminal charges by accepting court-appointed counsel for purposes of extradition.
 

 After Appellant filed this appeal, the United States Supreme Court decided
 
 Montejo v. Louisiana,
 
 — U.S. -, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009), in which it overruled
 
 Michigan v. Jackson,
 
 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). As a result, Appellant’s counsel candidly acknowledged at oral argument that his Sixth Amendment argument is meritless. Nevertheless, Appellant urges that, because his right to counsel under the Florida Constitution is more pervasive than the Sixth Amendment, suppression is still compelled.
 

 In
 
 Jackson,
 
 the United States Supreme Court held that “if police initiate interrogation after a defendant’s assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant’s right to counsel for that police-initiated interrogation is invalid.” 475 U.S. at
 
 *191
 
 636, 106 S.Ct. 1404. The Florida Supreme Court subsequently adopted the bright-line rule set forth in
 
 Jackson.
 
 It held that once the right to counsel has attached and been invoked, any waiver in the absence of counsel during police-initiated questioning is invalid.
 
 Owen v. State,
 
 596 So.2d 985, 989 (Fla.1992);
 
 see also Smith v. State,
 
 699 So.2d 629, 640 (Fla.1997);
 
 Traylor v. State,
 
 596 So.2d 957, 968 (Fla.1992) (“Evidence obtained by the State in contravention of these guidelines violates the Florida Constitution and may not be used by the State.”).
 

 In
 
 Montejo,
 
 the United States Supreme Court held that
 
 Jackson
 
 ⅛ bright-line rule was too detrimental to the truth-seeking process to justify its continuation. 129 S.Ct. at 2091. There, the defendant was arrested and charged with first-degree murder. The court appointed counsel to represent him, but before the defendant met with his attorney, police detectives visited the defendant at the prison and requested that he accompany them to locate the murder weapon. After being read his
 
 Miranda
 
 rights, the defendant agreed to go along. While he was with the detectives, the defendant wrote a letter of apology to the victim’s widow, in which he incriminated himself. The trial court admitted the letter over the defendant’s objection, and he was subsequently convicted of first-degree murder and sentenced to death.
 
 Id.
 
 at 2082.
 

 The defendant argued that the letter should have been suppressed under
 
 Jackson,
 
 asserting that his right to counsel had attached and been invoked. He claimed that his subsequent waiver during the police-initiated interrogation was invalid because it was obtained without counsel present.
 
 Id.
 
 at 2083. The Louisiana Supreme Court rejected the defendant’s argument, finding that
 
 Jackson
 
 did not apply because the defendant simply accepted court-appointed counsel, without making a request or assertion. The United States Supreme Court rejected such a distinction between defendants who actually request counsel and those who simply accept court-appointed counsel, but take no affirmative action to invoke the right to counsel.
 
 Id.
 
 It also rejected the defendant’s approach, however, that once a defendant is represented by counsel, police may not initiate any further interrogation, noting that “[s]uch a rule would be entirely untethered from the original rationale of
 
 Jackson.” Id.
 
 at 2085. Thus, the Court went on to consider whether
 
 Jackson
 
 should be overruled.
 

 The Court addressed the strength of
 
 Jackson
 
 ⅛ reasoning by weighing the rule’s benefits against its costs. The benefits of
 
 Jackson
 
 were that the police were prevented from badgering defendants into waiving their previously asserted rights, and that no fruits of interrogations made possible by such badgering-induced involuntary waivers were erroneously admitted at trial.
 
 Id.
 
 The costs of the
 
 Jackson
 
 rule were that voluntary confessions given after proper readings of
 
 Miranda
 
 rights would nonetheless be invalidated, that law enforcement would be deterred from even trying to obtain voluntary confessions, and that guilty and dangerous criminals would go free.
 
 Id.
 
 at 2090-91.
 

 In balancing the benefits against the costs, the Court reasoned that even without Jackson’s bright-line rule, few, if any, badgering-induced involuntary statements would be admitted at trial because a defendant’s constitutional rights were adequately protected by
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966),
 
 Edwards v. Arizona,
 
 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and
 
 Minnick v. Mississippi,
 
 498 U.S. 146, 153, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990).
 
 Montejo,
 
 129 S.Ct. at 2090.
 

 
 *192
 
 Under the
 
 Miranda-Edwards-Minnick
 
 line of cases ... a defendant who does not want to speak to the police without counsel present need only say as much when he is first approached and given the
 
 Miranda
 
 warnings. At that point, not only must the immediate contact end, but “badgering” by later requests is prohibited. If that regime suffices to protect the integrity of a “suspect’s voluntary choice not to speak outside his lawyer’s presence” before his arraignment, it is hard to see why it would not also suffice to protect that same choice after arraignment, when the Sixth Amendment rights have attached.
 

 Id.
 
 (internal citations omitted). The Court acknowledged that these Fifth Amendment cases provide a narrower constitutional protection than
 
 Jackson
 
 because they only apply during custodial interrogation. It noted, however, that noncustodial interrogations “do not involve the ‘inherently compelling pressures,’ that one might reasonably fear could lead to involuntary waivers.”
 
 Id.
 
 (quoting
 
 Miranda,
 
 384 U.S. at 467, 86 S.Ct. 1602). The Court concluded that the marginal benefits of
 
 Jackson
 
 were outweighed by the substantial costs to the truth-seeking process, and, therefore, overruled
 
 Jackson. Id.
 
 at 2091.
 

 Although
 
 Montejo
 
 resolved the issue under Sixth Amendment jurisprudence, the Supreme Court acknowledged that the states were free to continue prohibiting these types of police-initiated interrogations under their own constitutions.
 
 Montejo,
 
 129 S.Ct. at 2089. Thus,
 
 Montejo
 
 does not resolve the issue under article I, section 16 of the Florida Constitution. Since
 
 Montejo,
 
 our supreme court has not addressed whether it will continue to apply the bright-line
 
 Jackson
 
 rule under article I, section 16.
 

 There is nothing in our Florida Constitution that requires us to interpret the right to counsel in accordance with the United States Supreme Court. Indeed, Florida may afford greater right-to-counsel protections than those afforded by the Sixth Amendment.
 
 See, e.g., State v. Kelly,
 
 999 So.2d 1029, 1040, 1041 (Fla.2008) (holding that unlike search and seizure jurisprudence, Florida may give broader right to counsel under article I, section 16 than that provided by Sixth Amendment). In interpreting the right to counsel, our supreme court suggests that we should consider Justice Brennan’s admonishment:
 

 “[T]he decisions of the [United States Supreme] Court are not, and should not be, dispositive of questions regarding rights guaranteed by counterpart provisions of state law.
 
 Accordingly, such decisions are not mechanically applicable to state law issues, and state court judges and the members of the bar seriously err if they so treat them. Rather, state court judges, and also practitioners, do well to scrutinize constitutional decisions by federal courts,
 
 for only if they are found to be logically persuasive and well-reasoned, paying due regard to precedent and the policies underlying specific constitutional guarantees, may they properly claim persuasive weight
 
 as guideposts when interpreting counterpart state guarantees.”
 

 Kelly,
 
 999 So.2d at 1042 (emphasis in original) (quoting William J. Brennan, Jr.,
 
 State Constitutions and the Protection of Individual Rights,
 
 90 Harv. L. Rev. 489, 502 (1977)).
 

 Our state precedent on this issue was based solely on the Supreme Court’s holding in
 
 Jackson,
 
 with no independent reasoning under our state law.
 
 See, e.g., Smith,
 
 699 So.2d at 639;
 
 Owen,
 
 596 So.2d at 989;
 
 Traylor,
 
 596 So.2d at 968 n. 30. Although we think the Court’s cost-benefit analysis in
 
 Montejo
 
 to be well-reasoned and logical, and agree that a defendant’s
 
 *193
 
 constitutional rights are adequately protected through
 
 Miranda, Edwards
 
 and
 
 Minnick,
 
 we are bound by the precedent established by our state’s high court.
 
 Hoffman v. Jones,
 
 280 So.2d 431, 433-34 (Fla.1973). Therefore, we must consider the state constitutional claims of Appellant under the assumption that our high court will adhere to its precedent, despite
 
 Montejo.
 
 Under this analysis, we affirm, nevertheless, because Appellant did not invoke his right to counsel on the murder and burglary charges, and he waived his right to counsel prior to the interview with the sheriffs officers.
 

 Article I, section 16, of the Florida Constitution provides the accused with the right to counsel, which attaches at the earliest of the following points: “when the accused is formally charged with a crime via the filing of an indictment or information; as soon as feasible after custodial restraint; or at first appearance.”
 
 Smith,
 
 699 So.2d at 638. There is no question that Appellant’s right to counsel had already attached at the time of the interview. The question is whether he had invoked the right.
 

 The right to counsel is not self executing. Thus, the fact that the right to counsel has attached is not alone enough to trigger its constitutional protections. Rather, an accused must
 
 invoke
 
 the right to counsel.
 
 Id.; see also Patterson v. Illinois,
 
 487 U.S. 285, 290, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988) (noting that “[petitioner ... at no time sought to exercise his right to have counsel present”);
 
 Maine v. Moulton,
 
 474 U.S. 159, 170, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) (“Once the right to counsel has attached
 
 and been asserted,
 
 the State must of course honor it.” (emphasis supplied)). Additionally, the right to counsel is offense-specific; the attachment and invocation of the right on one charge does not amount to the invocation of that right on other charges against the same defendant.
 
 Owen,
 
 596 So.2d at 989 (citing
 
 McNeil v. Wisconsin,
 
 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)).
 

 The right to counsel only applies in the criminal context. Extradition is not a criminal offense. The purpose of an extradition proceeding is simply to bring suspects to trial in the state where the alleged offense was committed.
 
 State v. Soto,
 
 423 So.2d 362, 364 (Fla.1982). It is a civil proceeding related to a criminal proceeding in another jurisdiction. Thus, extradition proceedings do not carry the Sixth Amendment right to counsel.
 
 See United States v. Yousef,
 
 327 F.3d 56, 142 n. 66 (2d Cir.2003);
 
 Chewning v. Rogerson,
 
 29 F.3d 418, 421 (8th Cir.1994);
 
 Judd v. Vose,
 
 813 F.2d 494, 497 (1st Cir.1987). Appellant argues that although extradition itself does not carry the right to counsel, it cannot be separated from the underlying criminal charges for purposes of that right. He contends that, therefore, by accepting counsel’s representation for extradition, he invoked his right to counsel for the underlying criminal charges. We reject this argument.
 

 Even if we were to accept Appellant’s legal premise, however, the facts belie his argument. There is no evidence to demonstrate that Appellant considered the appointment of counsel or counsel’s appearance at the extradition hearing to extend to the murder and burglary charges. At the time, Appellant denied that he was the person being sought by Florida authorities. At the hearing on Appellant’s motion to suppress, the State introduced a signed affidavit from Appellant’s New York counsel. She avowed that she was appointed by the court to represent Appellant
 
 only
 
 on the New York charges and during the extradition proceedings. There was no testimony at the hearing to contradict that statement. There was also no evidence that counsel discussed the underlying murder and burglary charges with Appellant.
 
 *194
 
 Additionally, Appellant never indicated to the sheriffs officers that he was represented by counsel and never requested to speak with his New York counsel or to have her present during questioning. Appellant never requested representation of any kind. Instead, he simply signed the
 
 Miranda
 
 waiver and spoke with the officers.
 

 We hold, therefore, that Appellant did not invoke his right to counsel on the murder and burglary charges. The mere appearance of counsel for purposes of an extradition proceeding does not amount to an invocation of the right to counsel on the underlying criminal charges.
 
 Accord Chewning,
 
 29 F.3d at 422 (holding that mere appearance of counsel at extradition hearing could not reasonably be considered positive enough assertion, without other supporting evidence, to amount to invocation of right to counsel on underlying criminal charge);
 
 People v. Makiel,
 
 263 Ill.App.3d 54, 200 Ill.Dec. 602, 635 N.E.2d 941, 953 (1994) (holding mere acceptance of counsel for extradition insufficient to invoke right to counsel on underlying criminal charge). Having concluded that Appellant did not invoke his right to counsel, we now consider whether his waiver of that right was valid.
 

 A defendant may waive the right to counsel so long as the waiver is made voluntarily, knowingly and intelligently.
 
 Patterson,
 
 487 U.S. at 291, 108 S.Ct. 2389. Generally, where the defendant is advised of his
 
 Miranda
 
 rights, the waiver is considered knowing and intelligent.
 
 Id.
 
 at 293-94 (reasoning that
 
 Miranda
 
 warnings informed defendant of right to counsel and of consequences of waiving that right);
 
 see also Traylor,
 
 596 So.2d at 972 (finding valid waiver under article I, section 16 where defendant was read
 
 Miranda
 
 rights). The record is clear that Appellant’s waiver of his right to counsel was voluntary, knowing and intelligent. He was adequately informed of his
 
 Miranda
 
 rights prior to questioning, and he voluntarily waived those rights when he agreed to speak to the sheriffs officers without counsel present.
 
 [2]
 
 We hold, therefore, that the trial court properly denied Appellant’s motion to suppress.
 

 We certify to the Florida Supreme Court the following question of great public importance:
 

 Should Article I, Section 16 of the Florida Constitution, be interpreted in accordance with the Sixth Amendment analysis set forth in
 
 Montejo v. Louisiana,
 
 - U.S. -, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009), such that police officers may initiate interrogation of an accused without counsel present after the right to counsel has attached and been invoked?
 

 AFFIRMED; QUESTION CERTIFIED.
 

 TORPY, LAWSON and EVANDER, JJ., concur.
 

 [1]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [2]
 

 . At the beginning of the interview, the officers read a form entitled "Advice of Rights” to Appellant:
 

 [L]et me read this to you. It says ... "I have the right to remain silent. Anything I say can and will be used against me in a court of law. I have a right to talk to a lawyer and have him present with me while I'm being questioned. If I cannot afford to hire a lawyer, one will be appointed to represent me before any questioning if I wish one. And I understand that this interview and interrogation can and will be stopped at any time upon my request.”
 

 At the bottom of the form, where it states "I understand each of these rights have been explained to me and knowing these rights I do or do not wish to talk with you at this time,” Appellant wrote the word “do” and then signed his name.