[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11351
Non-Argument Calendar
_____

D.C. Docket No. 6:12-cv-01217-GKS-GJK


ANTHONY WILLIAMS,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 3, 2016)

Before WILLIAM PRYOR, JORDAN and JULIE CARNES, Circuit Judges.

PER CURIAM:

Anthony Williams, a Florida prisoner, appeals the denial of his petition for a

writ of habeas corpus. 28 U.S.C. § 2254. We issued a certificate of appealability to address Williams's argument that "he was denied his Sixth Amendment right to counsel when his counsel allegedly dozed or slept during a part of [his] trial." Because it was not an unreasonable application of clearly established federal law for the state trial court to conclude that Williams was not prejudiced by counsel "[falling] asleep a couple of times" while the state replayed a recording of an interview that was cumulative to earlier testimony from the interviewee, we affirm.

## I. BACKGROUND

We divide the discussion into three parts. First, we discuss Williams's indictment and his trial. Second, we discuss the unsuccessful state postconviction challenges filed by Williams. Third, we discuss the denial of Williams's federal petition for a writ of habeas corpus.

### A. Williams's Indictment and Trial

When Austin Joseph Paine intercepted burglars in his home, they shot and killed him. Chad Michael Leon afterward overdosed on morphine and checked himself into a hospital, where he implicated himself, Williams, and Randy Carter Jr. in Paine's murder. Leon later showed officers where in the ocean he had discarded a revolver and a semiautomatic firearm used by Williams and Carter.

A Florida grand jury indicted Williams, Carter, and Leon for first degree murder and for armed burglary. Leon pleaded guilty to the lesser crimes of second-

degree murder and armed burglary.

At trial, the state introduced testimony and forensic evidence that connected Williams to the crimes. Jarod Parrish testified that he introduced Williams to Carter and Leon and overheard the three men planning the burglary at a bar and at his house. Joshua Bartman testified that he saw Williams and Carter with a .38 caliber revolver and a nine millimeter semiautomatic handgun a few days before the murder. Carter's mother testified about renting a car for Carter, meeting Williams in Pennsylvania, Williams's relocation to the Carters' home, and Williams's exodus after the murder. Paine's girlfriend described how Paine bounded from bed after hearing the sound of glass breaking and a voice near a sliding door outside their bedroom, and then Rachel Vargas testified that she rented a hotel room on the night of the murder at the behest of Williams and Parrish with money that Williams provided. Leon testified about meetings with Williams and Carter; a botched attempt to burgle Paine's home; Williams's and Carter's admissions to shooting Paine; his role as the getaway driver; his disposal of Williams's revolver and Carter's semiautomatic handgun; and his interview with Mike Spadafora, an agent of the Brevard County Sheriff's Office.

Defense counsel questioned every witness. Counsel cross-examined Parrish and Paine's girlfriend about inconsistencies in their testimonies, and counsel elicited from Carter's mother that Williams planned to return to Pennsylvania

before the murder occurred and from Vargas that she never heard Williams or his cohorts discuss a burglary before asking her to rent the hotel room. Defense counsel objected repeatedly to Bartman's and Leon's testimonies, and the trial court allowed defense counsel to question Leon outside the presence of the jury before allowing him to testify about his conversations with Parrish.

Agent Spadafora authenticated the recording of Leon's interview and the state offered the recording as a prior consistent statement. Defense counsel objected and requested that the trial court examine the recording and allow him to question Leon without the jury present, but counsel later withdrew the objection. When questioned, Williams verified that he agreed with counsel's decision.

The prosecutor played the recording of Leon's interview, which consumed about 71 pages of the trial transcript. When the state turned on the audiotape, defense counsel complained that he couldn't "hear it over here." After the recording ended, defense counsel immediately cross-examined Agent Spadafora. The prosecutor requested a five minute break and defense counsel interjected, "I need to take a break; I fell asleep a couple of times."

The state introduced testimony from its experts and a second agent of the Brevard County Sheriff's Office. A forensic expert testified about discovering Paine's DNA on the armrest, inside the driver's door, and on a seatbelt in the back of the rental vehicle. On cross-examination, the forensic expert acknowledged that

4

he had excluded Williams as a contributor of the DNA found in Paine's fingernail clippings. After a latent print expert testified about matching Williams's left palm print and thumb print to a handprint discovered on the hood of the rental vehicle, defense counsel elicited from the expert that she had compared the handprint to only four samples. A firearms expert testified that a bullet discovered in the rental car matched ammunition that could be used in a nine millimeter pistol and that two of the three bullets extracted from Paine were fired from the same gun, and on cross-examination, the expert acknowledged that it was common to find bullets with similar class characteristics in semiautomatic weapons and revolvers and that she could not determine whether the bullets extracted from Paine were shot from the same clip. Over defense counsel's objections, Agent Gary Harrell testified that he interviewed Carter and Leon and that Leon admitted to driving the getaway car and discarding the murder weapons. On cross-examination, Agent Harrell acknowledged that Carter did not implicate Williams.

Defense counsel argued about inconsistencies in the evidence. Defense counsel recalled Leon and identified discrepancies in the statements that he made to different officers. And during closing statements, defense counsel argued that Leon's statements conflicted with the forensic evidence.

The jury found Williams guilty of first degree felony murder and armed burglary of a dwelling. Later, the trial court sentenced Williams to imprisonment

for life.

Williams, assisted by new counsel, argued on direct appeal that the trial court erred by denying his motion to suppress. The Fifth District Court of Appeal affirmed Williams's conviction and certified a question involving the right to counsel during interrogation to the Supreme Court of Florida. *Williams v. State*, 38 So. 3d 188, 190–94 (Fla. Dist. Ct. App. 2010). That court "decline[d] to exercise [its] jurisdiction" and denied summarily Williams's petition for review. *Williams v. State*, 39 So. 3d 1266 (Fla. 2010).

### B.  Williams's Unsuccessful State Postconviction Filings

Williams petitioned a state appellate court to issue a writ of habeas corpus. Williams argued that his appellate counsel should have argued that trial counsel was ineffective for falling asleep during the trial. The Fifth District Court denied Williams's petition summarily. *Williams v. State*, No. 5D11-787 (Fla. Dist. Ct. App. June 1, 2011).

Williams next moved for state postconviction relief, in part, based on the same claim of ineffectiveness of trial counsel. *See* Fla. R. Crim. P. 3.850. The trial court denied Williams relief under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). Although defense counsel had "remark[ed] on the record that he had fallen asleep," the trial court found that "just two pages earlier . . . he [had] been] actively cross-examining a State's witness." After a careful examination of

6

the trial transcript, the trial court found "it [was] clear that throughout the entire trial, defense counsel actively and vigorously cross-examined each of the State's witnesses, asking questions relevant to the testimony they had just offered," "[h]e interjected appropriate objections, [and] he seemed to be actively engaged in the entire process." Because Williams did not "point to any specific portion of the trial or any specific piece of testimony or evidence that counsel overlooked as the result of his alleged sleeping," the trial court ruled that Williams "fail[ed] to allege or demonstrate prejudice on [his] claim." The state appellate court affirmed without opinion. *Williams v. State*, 90 So. 3d 304 (Fla. Dist. Ct. App. 2012).

### C. Williams's Federal Petition for a Writ of Habeas Corpus

Williams filed in the district court a petition for a writ of habeas corpus and argued that he was denied the assistance of counsel because he was "sleeping through the trial." *See* 28 U.S.C. § 2254. The district court determined that *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039 (1984), did not control the analysis of Williams's claim because the record did not reflect that "counsel slept through a substantial portion of the trial." And the state court did not apply *Strickland* unreasonably, the district court ruled, because Williams "ha[d] not shown that counsel's actions resulted in prejudice." The district court based its decision on factual findings that, "[a]lthough defense counsel indicated that he fell asleep for a portion of the time period during which the taped statement was played," Williams

failed to "point to any other instance of counsel sleeping during the trial," and that a "review[] [of] the entire record" revealed that "defense counsel appear[ed] to have been alert during trial, properly respond[ed] to objections and questions, and cross-examin[ed] each witness."

## II. STANDARDS OF REVIEW

We review *de novo* the denial of a petition for a writ of habeas corpus that alleges ineffective assistance of counsel. *Williamson v. Fla. Dep't of Corr.*, 805 F.3d 1009, 1016 (11th Cir. 2015). A petitioner is entitled to a writ of habeas corpus only if the state court reached a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court makes an "unreasonable application" of clearly established federal law if the court "identifies the correct governing legal principle from [the] decisions [of the Supreme Court] but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S. Ct. 2527, 2534–35 (2003) (internal quotations and citation omitted). To establish an unreasonable application of federal law, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 786–87 (2011).

### III. DISCUSSION

Williams maintains that he is entitled to habeas corpus relief. Defense counsel's admission that he fell asleep twice while the jury listened to Leon's interview, Williams argues, constituted a denial of counsel and was prejudicial per se under *Cronic*. Because the state court reasonably evaluated Williams's claim under *Strickland* and Williams does not argue that he was prejudiced by counsel's conduct, we affirm the denial of Williams's petition for a writ of habeas corpus.

Williams failed to establish that the state court unreasonably applied clearly established federal law. "[C]learly established Federal law for purposes of § 2254(d)(1) includes only the holdings . . . of [the Supreme] Court's decisions." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks and citation omitted). The Supreme Court has not addressed whether the rule in *Cronic* applies if counsel dozes twice while a recording of an interview that is cumulative of earlier testimony and unobjectionable is played for the jury.

Williams cannot establish that the refusal of the state court to apply *Cronic* to his claim of ineffective assistance "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," *Harrington*, 562 U.S. at 103, 131 S. Ct. at 786–87. A defendant is entitled to a presumption of prejudice if defense counsel's conduct

9

resulted in a "complete denial of counsel . . . at a critical stage" of trial or an "entire[] fail[ure] to subject the prosecution's case to meaningful adversarial testing," *Cronic*, 466 U.S. at 659–60, 104 S. Ct. at 2047. The Supreme Court has held that *Strickland*, not *Cronic*, applies when "counsel failed to oppose the prosecution . . . [only] at specific points." *Bell v. Cone*, 535 U.S. 685, 697, 122 S. Ct. 1843, 1851 (2002). And the Supreme Court in *Woods* held that it was not contrary to or an unreasonable application of clearly established federal law for a state court to apply *Strickland* to a claim involving the absence of defense counsel from the courtroom for ten minutes while government witnesses testified about other defendants. *Woods*, 135 S. Ct. 1377–78. In the absence of controlling precedent, fairminded jurists could disagree about whether a defendant is entitled to a presumption of prejudice because defense counsel, who was otherwise actively engaged in the trial, "fell asleep a couple of times" while the jury listened to a recorded interview that was cumulative to testimony earlier provided by the interviewee.

Williams has abandoned any challenge that he could have made to the determination that he was not prejudiced by counsel's conduct. The state court ruled that Williams failed to "demonstrate prejudice," *see Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068, and Williams makes no argument about that ruling. Because "[i]ssues not clearly raised in the briefs are considered abandoned,"

10

*Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995), we need not address whether Williams was prejudiced by counsel's sleeping.

## IV. CONCLUSION

We **AFFIRM** the denial of Williams's petition for a writ of habeas corpus.